[No. B115365. Second Dist., Div. Four. Feb. 25, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRIEL M. WILBORN, Defendant and Appellant.

## Counsel

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Steven D. Matthews and M. Susan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**EPSTEIN, J.**—Jerriel M. Wilborn appeals from his conviction for possession of rock cocaine (Health & Saf. Code, § 11350, subd. (a)), with a true finding as to his "Three Strikes" allegations. (Pen. Code,[1] § 667, subds. (b) through (i).) He claims that he was subjected to an illegal or unreasonably prolonged detention, and that the resultant seizure of evidence violated his rights under the Fourth and Fourteenth Amendments; that the trial court erred in refusing to permit voir dire questions regarding racial bias or prejudice; that the evidence was insufficient as a matter of law to sustain his conviction; that the court's instruction on failure of recollection was erroneous and prejudicial; that the trial court failed to exercise an informed section 1385 discretion; and that his 25-year-to-life sentence is cruel and unusual punishment. Respondent asks this court to modify the judgment to impose a parole revocation fine and penalty assessments. We find the trial court's refusal to question prospective jurors about racial bias deprived appellant of a fair and impartial jury and reverse the judgment on that ground.

### FACTUAL AND PROCEDURAL SUMMARY

Sometime after midnight on June 1, 1996, Officers Fedele and Bolden were in a marked patrol car when they saw a yellow Cadillac driving southbound on St. Andrews Place with its headlights off. Officer Fedele made a U-turn and followed. As he got closer, he saw that the registration on the Cadillac had expired in December 1995. The officer activated his overhead red light to stop the car for driving without headlights and with expired tags. The Cadillac pulled over, and the officers pulled up behind.

Officer Fedele approached the car and spoke with the driver, appellant Wilborn. Officer Bolden approached the passenger. Appellant's window was down. Officer Fedele asked if he had a driver's license. Appellant said it was suspended. Officer Fedele noticed appellant had his knees together and his hands in his lap. Officer Fedele told appellant and the passenger to keep their hands in plain view. Appellant kept dropping his hands to his lap while his thighs were parallel and his knees still together.

Officer Fedele asked appellant to step from the vehicle. When appellant got out, the officer saw a small, zip-lock baggie in plain view on the driver's

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

side floorboard, roughly below the place where appellant's knees had been. The baggie contained an off-white, rock-like chunk, which was later determined to be rock cocaine. Officer Fedele also recovered a pipe from the ashtray. It had been used, but was not hot.

Appellant was arrested and charged with possession of rock cocaine, with two prior strikes and seven prior prison terms. He was found guilty of possession, and the priors allegations were found true. He appeals from the judgment of conviction.

## DISCUSSION

### I

█ Appellant claims the trial court's refusal to permit any voir dire questions concerning racial bias or prejudice constituted a reversible abuse of discretion and violated his Sixth Amendment right to an impartial unbiased jury. We agree.

Appellant submitted a written motion requesting attorney-conducted voir dire and specific voir dire questions inquiring into racial bias of any prospective jurors.[2] As explained in the motion, the defense to be presented was fabrication by the police, and appellant felt it was important to ascertain

[2]The proposed questions concerning racial bias or prejudice included:

"16. If it develops in [the] case that testimony of black witnesses contradict[s] the testimony of white witnesses, other things being equal, [would] you give testimony of blacks and whites equal credit?

"17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"18. Do you have any feelings against black persons who makes claims against police/sheriff, such as fabricating a fase [sic] account of events?

"19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"21. Have any demonstrations, activities, riots by blacks in various parts of USA over past years left you with any feelings of hostility or prejudice towards blacks?

"22. Following the OJ verdict, did your feelings against racist police or lying police change?

"23. Following the OJ verdict, did your feelings regarding 'the race card' change?

"24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"25. Following the OJ verdict, did your feelings regarding treatment of blacks by the police change?

"26. Is there anything about this case, in which a black citizen may claim white police officers lied and fabricated a false story about how they arrested, that would make you uneasy about sitting on this jury, or would cause you to be prejudiced for or against either side?

"27. Have you ever experienced involving a black person which left you with a feeling a prejudice concerning members of the black race?

"28. Have you ever felt in your mind that black leaders are 'going too far' in their struggle for equal rights?

juror bias against that defense. The police officers who arrested appellant are White, and appellant is African American.

The trial court conducted the voir dire, as authorized by Code of Civil Procedure section 223. The jurors provided normal autobiographical information. The trial court then asked whether the jurors or any of their friends or family members (1) are in the law enforcement field; (2) have been the victim of a violent crime; (3) have had any involvement with narcotics; or (4) have been arrested or convicted of a crime.

No voir dire questions were asked about racial bias or prejudice. When the court took up challenges for cause, defense counsel asked whether the court was "going to get into any racial questions at all?" The court replied, "I was going to try not to." The prosecutor objected to questions about race. Defense counsel urged, "I just want to make sure they're not going to hold it against him." Cocounsel told the court she had case law indicating that it would be proper to ask jurors, " 'What is your experience with blacks?' " The court responded: "I think I would rather not get into race. I don't want it interjected either as a pro or con, just as we don't have—we have the panel that we have sitting out there. So I don't want to taint anybody."

■ "[T]he exercise of discretion by trial judges with respect to the particular questions to ask and areas to cover in voir dire is entitled to considerable deference by appellate courts." (*People* v. *Taylor* (1992) 5 Cal.App.4th 1299, 1313 [7 Cal.Rptr.2d 676].) The trial judge "is in the best position to assess the amount of voir dire required to ferret out latent prejudice, and to judge the responses." (*Id.* at p. 1314.) "But with the heightened authority of the trial court in the conduct of voir dire, mandated under [Code of Civil Procedures section 223], goes an increased responsibility to assure that the process is meaningful and sufficient to its purpose of ferreting out bias and prejudice on the part of prospective jurors." (*Ibid.*) The trial court's refusal to ask any questions regarding racial bias in this case fell short of satisfying that duty.

The United States Supreme Court has recognized the importance of voir dire questioning about racial bias in a series of cases beginning in 1931 with *Aldridge* v. *United States* (1931) 283 U.S. 308 [51 S.Ct. 470, 75 L.Ed. 1054, 73 A.L.R. 1203]. Defendant Aldridge was African-American, and the victim was a White policeman. The defendant asked that the trial court question prospective jurors about racial prejudice, but the court refused. The Supreme

---

"29. Would the fact that the D is a member of a minority group make it more difficult for you to consider the facts objectiely [*sic*] and vote an acquittal in his favor than if he were not a member of such group?"

Court reversed, holding that under the facts of that case, the "essential demands of fairness" required the trial court to question potential jurors as to racial prejudice in order to ascertain the existence of a disqualifying state of mind. (*Id.* at pp. 310, 314 [51 S.Ct. at pp. 471, 473].)

In *Ham* v. *South Carolina* (1973) 409 U.S. 524 [93 S.Ct. 848, 35 L.Ed.2d 46], the African-American defendant claimed he had been framed on a charge of marijuana possession by law enforcement officers who were "out to get him" because of his civil rights activities. Prior to voir dire, he requested that the judge ask potential jurors four questions relating to possible prejudice. Two of the questions sought to elicit possible racial prejudice against African-Americans; the other two dealt with the defendant's appearance and pretrial publicity. The trial court refused to ask any of the proposed questions. After reviewing its holding in *Aldridge*, the Supreme Court held: "Since one of the purposes of the Due Process Clause of the Fourteenth Amendment is to insure these 'essential demands of fairness,' [citation], and since a principal purpose of the adoption of the Fourteenth Amendment was to prohibit the States from invidiously discriminating on the basis of race, [citation], we think that the Fourteenth Amendment required the judge in this case to interrogate the jurors upon the subject of racial prejudice." (*Id.* at pp. 526-527 [93 S.Ct. at p. 850].)

In *Ristaino* v. *Ross* (1976) 424 U.S. 589 [96 S.Ct. 1017, 47 L.Ed.2d 258], the defendant was an African-American, convicted in state court of violent crimes against a White security guard. He asked the trial court to question prospective jurors about racial prejudice, and the court refused. The Supreme Court granted certiorari to decide whether, under its holding in *Ham*, the defendant was constitutionally entitled to require the asking of a question specifically directed to racial prejudice; and whether *Ham* announced a requirement applicable whenever there may be a confrontation in a criminal trial between persons of different races or ethnic origins. The court answered both questions in the negative.

"The Constitution does not always entitle a defendant to have questions posed during *voir dire* specifically directed to matters that conceivably might prejudice veniremen against him. [Citation.] . . . . [T]he State's obligation to the defendant to impanel an impartial jury generally can be satisfied by less than an inquiry into a specific prejudice feared by the defendant." (*Ristaino* v. *Ross, supra,* 424 U.S. at pp. 594-595 [96 S.Ct. at pp. 1020-1021], fn omitted.) The court limited its holding in *Ham* to cases where there is a significant likelihood that racial prejudice might infect the trial, not just cases where the defendant and the victim are of different races. (*Id.* at pp. 597-598 [96 S.Ct. at pp. 1021-1022].) "By its terms *Ham* did not announce

a requirement of universal applicability. Rather, it reflected an assessment of whether under all of the circumstances presented there was a constitutionally significant likelihood that, absent questioning about racial prejudice, the jurors would not be as 'indifferent as [they stand] unsworne.' [Citation.]" (*Id.* at p. 596 [96 S.Ct. at p. 1021], fn. omitted.)[3]

Next in the sequence of cases in the plurality opinion in *Rosales-Lopez* v. *United States* (1981) 451 U.S. 182 [101 S.Ct. 1629, 68 L.Ed.2d 22]. The defendant was of Mexican descent, and was convicted of smuggling Mexican aliens into the United States. The defendant wanted prospective jurors questioned about possible prejudice toward Mexicans. The trial court refused, although it did ask whether the prospective jurors had " 'any feelings about the alien problem' " or whether they had " 'any particular feelings one way or the other about aliens or could you sit as a fair and impartial juror if you are called upon to do so?' " (*Id.* at p. 186 [101 S.Ct. at p. 1633].)

Noting the factual distinction between the *Ham* and *Ristaino* cases, the court held: "There is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups. As *Ristaino* demonstrates, there is no *per se* constitutional rule in such circumstances requiring inquiry as to racial prejudice. [Citation.] Only when there are more substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in a particular case does the trial court's denial of a defendant's request to examine the jurors' ability to deal impartially with this subject amount to an unconstitutional abuse of discretion." (*Rosales-Lopez* v. *United States, supra,* 451 U.S. at pp. 189-190 [101 S.Ct. at pp. 1635].)

The court then articulated "an appropriate nonconstitutional standard" for federal courts faced with the conflict between a defendant's desire to have the inquiry made and the potential detriment of injecting racial or ethnic issues into the court: "In our judgment, it is usually best to allow the defendant to resolve this conflict by making the determination of whether or not he would prefer to have the inquiry into racial or ethnic prejudice pursued. Failure to honor his request, however, will be reversible error only where the circumstances of the case indicate that there is a reasonable possibility that racial or ethnic prejudice might have influenced the jury." (451 U.S. at p. 191 [101 S.Ct. at p. 1936], fn. omitted.)

Five years later, the Supreme Court decided *Turner* v. *Murray* (1986) 476 U.S. 28 [106 S.Ct. 1683, 90 L.Ed.2d 27]. An African-American man was

---

[3]In a footnote, the court recognized the factual similarity between *Ristaino* and the earlier *Aldridge* case. Noting that *Aldridge* was not expressly grounded upon any constitutional requirement, and "[i]n light of our holding today, the actual result in *Aldridge* should be recognized as an exercise of our supervisory power over federal courts." (*Ristaino* v. *Ross, supra,* 424 U.S. at p. 598, fn. 10 [96 S.Ct. at p. 1022].)

convicted of murdering a White man and was sentenced to death. The Supreme Court held that the mere fact of a violent interracial crime was not a *Ristaino* "special circumstance" requiring that prospective jurors be questioned on racial bias. However, ". . . a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias. The rule we propose is minimally intrusive; as in other cases involving 'special circumstances,' the trial judge retains discretion as to the form and number of questions on the subject, including the decision whether to question the venire individually or collectively. [Citation.] Also, a defendant cannot complain of a judge's failure to question the venire on racial prejudice unless the defendant has specifically requested such an inquiry." (*Id.* at pp. 36-37 [106 S.Ct. at pp. 1688, 1689], fn. omitted.)

The Supreme Court's most recent examination of voir dire questioning in this context is *Mu'Min* v. *Virginia* (1991) 500 U.S. 415 [111 S.Ct. 1899, 114 L.Ed.2d 493]. The defendant Mu'Min wanted prospective jurors questioned about the specific contents of news reports they had seen about him and the crime with which he was charged. The court reviewed the series of cases we have summarized, and found two themes: "First, the possibility of racial prejudice against a black defendant charged with a violent crime against a white person is sufficiently real that the Fourteenth Amendment requires that inquiry be made into racial prejudice; second, the trial court retains great latitude in deciding what questions should be asked on *voir dire.*" (*Id.* at p. 424 [111 S.Ct. at p. 1904].)

In *People* v. *Holt* (1997) 15 Cal.4th 619 [63 Cal.Rptr.2d 782, 937 P.2d 213], the California Supreme Court reiterated the principles set out in *Mu'Min* in considering a claim of inadequate voir dire. The court first noted that there was no evidence supporting the appellant's claim that racism is "currently prevalent" in Kern County. Nevertheless, the court explained that adequate inquiry into possible racial bias is essential in a case with an African-American defendant charged with a capital crime against a White victim. (*Id.* at pp. 660-661.)

The court then turned to appellant's claim that the court did not include all areas of inquiry recommended by the Judicial Council.[4] "Trial court judges should closely follow the language and formulae for voir dire recommended

[4]Section 8.5 (b)(18) of the California Standards of Judicial Administration (23 pt. 2 West's. Cal. Codes Ann. Rules (1996 ed.) Appen., p. 663) (Standards) suggests the following inquiry, when appropriate: "It may appear that one or more of the parties, attorneys or witnesses come from a particular national, racial or religious group (or may have a life style different than your own). Would this in any way affect your judgment or the weight and credibility you would give to their testimony?"

by the Judicial Council in the Standards to ensure that all appropriate areas of inquiry are covered in an appropriate manner. Failure to use the recommended language may be a factor to be considered in determining whether a voir dire was adequate, but the entire voir dire must be considered in making that judgment." (*People* v. *Holt, supra,* 15 Cal.4th at p. 661.)

The court explained the standard for reversal: "Unless the voir dire by a court is so inadequate that the reviewing court can say that the resulting trial was fundamentally unfair, the manner in which voir dire is conducted is not a basis for reversal." (*People* v. *Holt, supra,* 15 Cal.4th at p. 661.) The court observed that in the case before it, voir dire was not conducted by the judge alone. Counsel were given an unlimited opportunity to inquire further into the views of the prospective jurors and to probe for possible hidden bias and took advantage of that opportunity. The voir dire covered substantially all the areas of inquiry in the Standards, and followed completion by each prospective juror of a questionnaire which covered an even broader range of topics. Considering all these factors, the court was satisfied that the inquiry into possible racial bias was adequate to meet constitutional standards.

 Those same factors dictate a different result in the case before us. We look first at the possibility that race would be a significant issue in the trial. Appellant is African-American, and the police officers who detained and arrested him are White. The defense was that the White officers fabricated the basis for their traffic stop and detention. Under these circumstances, as in *Ham* v. *South Carolina, supra,* 409 U.S. 524 racial issues were likely to be inextricably bound up with the conduct of the trial. We find these are the type of special circumstances in which "an impermissible threat to the fair trial guaranteed by due process is posed by a trial court's refusal to question prospective jurors specifically about racial prejudice during voir dire." (*Ristaino* v. *Ross, supra,* 424 U.S. at p. 595 [96 S.Ct. at p. 1021].)

Voir dire was conducted only by the court. The court inquired whether prospective jurors or their friends or family were involved in law enforcement, had been victims of violent crime, had any involvement with narcotics, or had any arrests or convictions. None of these questions was likely to elicit the existence of racial bias or prejudice. The court's remark, in rejecting all "racial" questions indicates an objective of avoiding extraneous racial issues. But the purpose of the voir dire is not to introduce prejudice and bias into the decisionmaking process, but to keep them out.

Appellant carefully preserved this issue, first by written motion requesting specific questions, and then by asking the court whether it would inquire into racial bias. The trial court was well within its discretion in refusing to ask

the precise questions proposed by appellant. As the Supreme Court explained in *Ham* v. *South Carolina, supra,* 409 U.S. at page 527 [93 S.Ct. at page 850]: "[T]he trial judge was not required to put the question in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner." But in this case, where the defense by an African-American defendant rested entirely on a credibility challenge to the White police officers, the court had an obligation to make *some* inquiry as to racial bias of the prospective jurors. It made none, thereby denying appellant the opportunity to determine whether the prospective jurors had a disqualifying state of mind. This is a violation of appellant's constitutional right to a fair and impartial jury, and requires reversal.

## II

For the benefit of the court on retrial, we address appellant's claim that his detention was illegally prolonged in violation of his Fourth Amendment rights. In ruling on the motion to suppress, the trial court heard, and apparently credited, testimony by Officer Fedele that he observed appellant driving without headlights at 1:15 a.m., and then noticed that the registration tags on the vehicle were expired. After stopping the vehicle, the officer asked appellant if he had a driver's license, and appellant told him it had been suspended. The officer asked appellant if there were any guns in the car. Appellant said no, and told the officer he could search the car. Officer Fedele then asked appellant to get out of the car. As appellant did so, the officer saw a small clear baggie containing what appeared to be rock cocaine. It was "laying on the driver's side of the floorboard."

In *Knowles* v. *Iowa* (1998) 525 U.S. 113, __ [119 S.Ct. 484, 486, 142 L.Ed.2d 492], the United States Supreme Court emphasized that concern for officer safety may justify the " 'minimal' additional intrusion of ordering a driver and passengers out of the car" in the case of a routine traffic stop such as the one in this case. Once appellant was justifiably ordered out of the car, Officer Fedele, standing in a lawful position, observed the baggie containing what appeared to be rock cocaine, lying in plain view, and hence was justified in seizing it. (*Minnesota* v. *Dickerson* (1993) 508 U.S. 366, 375 [113 S.Ct. 2130, 2137, 124 L.Ed.2d 334]; *People* v. *Calvert* (1993) 18 Cal.App.4th 1820, 1829 [23 Cal.Rptr.2d 644].)

## III

In light of the admissibility of that evidence, we reject appellant's further claim that the evidence is insufficient as a matter of law to support his conviction. When the Cadillac was stopped, appellant repeatedly dropped his

hands to his lap and kept his knees together, suggesting he was hiding something. After he stepped out of the car, the baggie containing .092 grams of base cocaine was found on the floorboard, on the side where appellant had been sitting. Appellant stipulated that he knew the substance found in the baggie was a controlled substance. This is sufficient evidence to support a conviction for violation of Health and Safety Code section 11350, subdivision (a).

## DISPOSITION

The judgment is reversed.

Vogel (C. S.), P. J., and Curry, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 3, 1999.