[No. C035295. Third Dist. Apr. 8, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
JOY ANN MELLO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

512

---

**COUNSEL**

Eileen S. Kotler, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael A. Canzoneri, Julia Bancroft and David A. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SCOTLAND, P. J.**—A jury convicted defendant Joy Ann Mello of aiding and abetting the robbery and false imprisonment of a gas station attendant, and found that she was armed with a firearm while the offenses were committed. (Pen. Code, §§ 211, 236, 12022, subd. (a).) Defendant admitted having a prior serious felony conviction (Pen. Code, § 667, subd. (a)(1)) and was sentenced to a term in state prison.

On appeal, defendant, an African-American woman, contends the judge who presided over her trial irremediably tainted the proceeding by instructing prospective jurors during voir dire that, if they harbored racial bias against defendant because of her race, they should lie about it under oath and make up some other reason to be excused from serving as jurors on this case. The People concede that, although well-meaning, the judge's instructions were "unacceptable." They assert, however, that the error was harmless.

We, too, conclude that the judge erred in telling prospective jurors to lie; but we disagree with the claim of harmless error. As explained in the published portion of our opinion, although the judge's motive was admirable (to exclude racial bias from the jury), his method (instructing prospective jurors to lie under oath) was grave error that undermined defendant's ability to secure a fair and impartial jury and adversely affected the fundamental truth-finding function of the jury. Accordingly, we shall reverse the judgment and give defendant the opportunity for a new trial.

In the unpublished parts of our opinion, we address defendant's other claims of error for the guidance of the court and parties on remand.

DISCUSSION

I

Shortly after the prospective jurors swore under penalty of perjury to answer all questions truthfully during voir dire (Code Civ. Proc., § 232, subd. (a)),[1] Judge Joe O'Flaherty stated to them: "Now, a touchy subject. . . . [¶] All right. Here's a sensitive one. The defendant is African

---

[1]Code of Civil Procedure section 232, subdivision (a) states: "Prior to the examination of prospective trial jurors in the panel assigned for voir dire, the following perjury acknowledgement and agreement shall be obtained from the panel, which shall be acknowledged by the prospective jurors with the statement 'I do': [¶] 'Do you, and each of you, understand and agree that you will accurately and truthfully answer, under penalty of perjury, all questions propounded to you concerning your qualifications and competency to serve as a trial juror in the matter pending before this court; and that failure to do so may subject you to criminal

American. Okay. Almost everybody in this courtroom is white, Caucasian. [¶] Now, race simply does not—I don't want any racism in my court, which most of you know by now, but I go a little further than that. [¶] I recognize that most people in today's age don't want to raise their hand and say ['JI am a bigot['] or [']I'm a racist[']. So what I'm going to do, *if any of you have the slightest doubt that you might not, for racial reasons, be able to give this defendant a fair trial, I'm going to give you permission to lie.* [¶] I want you to tell me—*there's plenty of other reasons, which you as intelligent people know that you can dream up, how you will not—you can get out of sitting here.* [¶] *Okay. I want you to come up with something so that you can get out of sitting here.* I don't want that issue to raise its head in this courtroom. All right. Can everybody assure me of that?" (Italics added.)

At the first recess, counsel moved for a mistrial on the ground that Judge O'Flaherty had "prejudiced or tainted this panel," citing among other things the judge's remarks that we have quoted above. Judge O'Flaherty refused to grant a mistrial, and also denied defendant's motion to discharge the venire panel and replace it with a new one.

Despite defense counsel's objection, Judge O'Flaherty returned to the theme when new prospective jurors were brought into court after the next recess. He told them: "Now, the defendant is African American. Okay. Obviously, racism has no place in the courtroom. I would like to see it have no place at all, but it's around, and so I don't want it in here. [¶] So when we go through this, I mean, I know that some people, unfortunately, still harbor some bigotry, and my job is definitely not to judge you jurors. I want to make that clear, and I'm not doing that; but on the other hand, like I said, bigotry cannot have any place in this courtroom. [¶] If you feel, if you have the slightest doubt that you can give the defendant a fair trial because of this reason, you can just come right out and say it. [¶] That would be one way to do it, but I recognize that this is—it's kind of insulting and embarrassing to raise your hand and say I'm a racist. [¶] *What I'd like you to do, and I will give you permission in this very narrow area, you can lie. You can say that—what I want you to do is to find some other reason to get excused.* [¶] *It doesn't take a rocket scientist to figure out how to get excused, if you put your mind to it, and I'd rather have you do that than sit on the jury if there's a problem in this area.* Okay. Does everybody understand that?" (Italics added.)

Ultimately, a jury was impaneled and the case proceeded to trial. When the jury returned its verdicts, defense counsel moved for a new trial,

prosecution[?]' " This oath is used in criminal cases as well as civil cases. (Code Civ. Proc., § 192; *People v. Lewis* (2001) 25 Cal.4th 610, 630 [106 Cal.Rptr.2d 629, 22 P.3d 392].) Although the oath is not contained in the appellate record, the People agree that we can presume the prospective jurors so swore to tell the truth during voir dire. (Evid. Code, § 664.)

asserting among other things that the judge's remarks to prospective jurors about racial bias, including his instructions for them to lie about such bias, constituted prejudicial error.

After stating he did not mean to suggest that the court should not have mentioned race at all, and saying he believed that Judge O'Flaherty "had every good intent," defense counsel began to argue: "But then when the Court instructs the jury that the Court gives the jury permission to lie about bigotry or feelings of racial prejudice, and that's exactly what this Court did—." At this point, Judge O'Flaherty interrupted: "Yeah, but that's misstating it. I want to make it clear, I don't want this distorted, because it's personal to me. . . . [¶] This Court feels very strongly no aspect of . . . race [should] enter this courtroom. I still don't see any other way. What I told the jury was that the problem is, of course, a lot of people raising their hands and saying that they are prejudiced, that they are a bigot, is an insult, even though they may actually be, and to force them into that position, before that fact can be known and they can be released from the jury, I think, is asking for trouble in the fairness aspect. [¶] A juror could very well harbor these kinds of prejudice and not want to admit that, and if you don't give them any way out, they're liable to stay on the jury. So that is the reason why I do that. [¶] I still don't see a better way to do it, but if someone wants to instruct me otherwise, I'm perfectly willing to listen."

Defense counsel then pointed out that Judge O'Flaherty's instructions might have encouraged biased persons to lie about their racism in the hope of staying on the panel and getting the chance to convict an African-American defendant. Judge O'Flaherty responded: "The human mind is complex, and if a juror wants to intentionally sabotage a trial, and it has happened in a variety of contexts, that he or she can do it, or at least it's possible that they can do it, but for the person who feels, for example, that they may have some racial animus and that this could enter their thoughts on the case, this gives them a way out. Frankly, I think that's the better way to go."

After noting correctly that "we've kind of ventilated this enough for the appellate court," Judge O'Flaherty denied the motion for new trial.

▇▇ Defendant claims Judge O'Flaherty's repeated instructions to prospective jurors to lie under oath about racial bias violated defendant's federal and state constitutional rights to a fair and impartial jury and to due process of law (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 16), and the court abused its discretion in denying defendant's motion for new trial on that ground. We agree.

■ A trial judge's exercise of discretion in the questioning of prospective jurors during voir dire commands deference from an appellate court, but not without limit. "[W]ith the heightened authority of the trial court in the conduct of voir dire . . . goes an increased responsibility to assure that the process is meaningful and sufficient to its purpose of ferreting out bias and prejudice on the part of prospective jurors." (*People v. Taylor* (1992) 5 Cal.App.4th 1299, 1314 [7 Cal.Rptr.2d 676].)

■ Where racial bias is concerned, the judge's duty to inquire comes from California law as well as from the Sixth and Fourteenth Amendments to the United States Constitution. (*Mu'Min v. Virginia* (1991) 500 U.S. 415, 424 [111 S.Ct. 1899, 1904-1905, 114 L.Ed.2d 493, 505]; *People v. Holt* (1997) 15 Cal.4th 619, 660-661 [63 Cal.Rptr.2d 782, 937 P.2d 213]; *People v. Wilborn* (1999) 70 Cal.App.4th 339, 343-346 [82 Cal.Rptr.2d 583].) If the judge fails so abjectly in this duty that prospective jurors can conceal racial bias with impunity, the judge's failure violates the defendant's right to a fair and impartial jury and renders the ensuing trial fundamentally unfair. (See *People v. Holt, supra,* 15 Cal.4th at p. 661; *People v. Wilborn, supra,* 70 Cal.App.4th at pp. 347-348.)

There is a simple way during voir dire for trial judges to inquire properly into racial bias. They need only follow the Judicial Council's guidelines for such inquiry, which our high court has expressly endorsed. (*People v. Holt, supra,* 15 Cal.4th at pp. 660, fn. 13, & 661; see also *People v. Wilborn, supra,* 70 Cal.App.4th at pp. 346-347.) Section 8.5(b)(18) of the California Standards of Judicial Administration (23 pt. 2 West's Cal. Codes Ann. Rules (1996 ed.) appen., p. 663 (hereafter Standards)) proposes the following wording: "It may appear that one or more of the parties, attorneys or witnesses come from a particular national, racial or religious group (or may have a life style different than your own). Would this in any way affect your judgment or the weight and credibility you would give to their testimony?"

Our Supreme Court has pointedly observed: "Trial court judges should closely follow the language and formulae for voir dire recommended by the Judicial Council in the Standards to ensure that all appropriate areas of inquiry are covered in an appropriate manner." (*People v. Holt, supra,* 15 Cal.4th at p. 661.)

Unfortunately, Judge O'Flaherty did not heed the high court's admonition. Instead, he instructed prospective jurors that, if they harbored racial bias against defendant, they should lie about it under oath and make up other reasons to be excused. Simply stated, this is astonishing. Prospective jurors are required to take an oath to " 'accurately and truthfully answer, under

penalty of perjury, all questions' " concerning their qualifications and competency to serve as jurors. (Code Civ. Proc., § 232, subd. (a).) Violation of that oath is perjury, a felony offense. (Pen. Code, §§ 118, subd. (a), 126; *People v. Meza* (1987) 188 Cal.App.3d 1631, 1646-1647 [234 Cal.Rptr. 235].) Absent a statute's constitutional infirmity, a trial court does not have authority to disregard such legislative provisions. (*In re Garner* (1918) 179 Cal. 409, 411-412 [177 P. 162], disapproved on another ground in *In re Lynch* (1972) 8 Cal.3d 410, 424, fn. 15 [105 Cal.Rptr. 217, 503 P.2d 921]; see also *Johnson v. Superior Court* (1958) 50 Cal.2d 693, 696 [329 P.2d 5].) And a court cannot authorize, in advance, the violation of a valid criminal statute. (*City of Los Angeles v. Superior Court* (1959) 51 Cal.2d 423, 430 [333 P.2d 745]; *Manchel v. County of Los Angeles* (1966) 245 Cal.App.2d 501, 506 [54 Cal.Rptr. 53].)[2] Hence, Judge O'Flaherty erred in advising prospective jurors to lie under oath.

At oral argument in this court the People conceded that the instruction was "unacceptable" even though it was given with the best of intentions. Nevertheless, the People argue the error may be assessed for prejudice and, under the circumstances of this case, it must be deemed harmless. We disagree. The instructions telling prospective jurors who were prejudiced against defendant because of her race to lie about it and make up some other reason to be excused from serving as a juror on this case had practical, deleterious consequences.

First, the instructions irremediably tainted the trial by making it impossible for the parties to know whether a fair and impartial jury had been seated. This occurred in several ways. With respect to the first panel of prospective jurors, Judge O'Flaherty relied on the direction to lie in lieu of questioning them about racial attitudes. Therefore, any person on the first panel who may have been reluctant to lie under oath, even with the judge's permission, was not otherwise asked about racial animus. With respect to the second panel, the judge did ask if there were prospective jurors who were "willing to say" that they could not accord the defendant a fair trial because of her race. However, after being told that bigotry has no place in the courtroom and that it is insulting and embarrassing to admit racial animus, some prospective jurors may have been reluctant to volunteer information of a racial animus, yet unwilling to lie under oath. (See *People v. Meza, supra,*

---

[2]This is not to say that a prospective juror could be successfully prosecuted for perjury after he or she followed such a judicial directive. That would present one of the rare situations in which reliance on official advice would excuse a violation of the law. (*People v. Bray* (1975) 52 Cal.App.3d 494, 499 [124 Cal.Rptr. 913]; *People v. Ferguson* (1933) 134 Cal.App. 41, 53 [24 P. 965].) Moreover, the entrapment defense would be available. (*People v. Benford* (1959) 53 Cal.2d 1, 9 [345 P.2d 928].) While these defenses serve to excuse the violation of law, they do not serve to make the conduct lawful. (*Ibid.*)

188 Cal.App.3d at p. 1645.) And, while prospective jurors were told to invent false excuses to get off the jury, they were not informed of what kinds of false excuses would suffice. Thus, if a prospective juror was biased, he or she might not have been inventive enough, knowledgeable enough, or bold enough to make up the kind of false excuse that would result in being excused from the jury. Moreover, as defendant's trial counsel pointed out, it cannot be assumed that a prospective juror instructed to lie about racial bias would tell only the kind of lie Judge O'Flaherty wanted, i.e., a false excuse not to serve as a juror. It is plausible that, if a prospective juror was biased against defendant because of her race, that person could have taken the instructions to lie as a license to conceal the bias in hope of being seated on the jury. It also is possible that prospective jurors who did not harbor racial animus, but who possessed information they regarded as comparably embarrassing, could take the judge's instruction as a justification to lie about or otherwise conceal such information.

Consequently, Judge O'Flaherty's well-intentioned but misguided directives frustrated the main object of voir dire, to "ferret[] out bias and prejudice on the part of prospective jurors." (*People v. Taylor, supra,* 5 Cal.App.4th at p. 1314.)

Second, the erroneous instructions advised prospective jurors to both conceal and falsify relevant information. This procedure could deprive the parties of information necessary to make informed tactical decisions. For example, information provided by the prospective jurors might lead counsel to conclude that there is good cause for a motion to change venue (Pen. Code, § 1033, subd. (a); Cal. Rules of Court, rule 4.151; *People v. Bolin* (1998) 18 Cal.4th 297, 312-313 [75 Cal.Rptr.2d 412, 956 P.2d 374]) or to challenge the venire (*People v. Medina* (1990) 51 Cal.3d 870, 888-889 [274 Cal.Rptr. 849, 799 P.2d 1282]; *People v. Martinez* (1991) 228 Cal.App.3d 1456, 1465-1467 [279 Cal.Rptr. 858]). Such information also is utilized in the exercise of peremptory challenges. (*People v. Wright* (1990) 52 Cal.3d 367, 397 [276 Cal.Rptr. 731, 802 P.2d 221].) And it may convince a defendant of the wisdom of attempting to negotiate a plea, or may influence consideration of the witnesses to be called and the subjects to be addressed or avoided.

Finally, the instructions to lie during voir dire infected the entire trial process with the unacceptable notion that lying under oath may be appropriate. Once given those instructions, the jurors eventually seated may not have taken with the requisite solemnity their later oath to " 'well and truly try the cause now pending before [the] court, and a true verdict render according only to the evidence presented to you and to the instructions of the court.' " (Code Civ. Proc., § 232, subd. (b).) For this and other reasons, jurors never

should be advised that they can follow or ignore the law as they choose. (*People v. Williams* (2001) 25 Cal.4th 441, 458-459 [106 Cal.Rptr.2d 295, 21 P.3d 1209].) Moreover, the instructions to lie during voir dire could have adversely affected the jurors' subsequent evaluation of the witnesses' sworn testimony. After all, Judge O'Flaherty advised the jurors that discomfort with telling the truth justifies concealing it, even under oath, in at least one circumstance. In effect, the judge set the wrong tone for the jurors' compliance with all of their important obligations.

By depriving defendant of the ability to ensure that she would have a fair and impartial jury, Judge O'Flaherty also deprived her of due process of law. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 24; *People v. Holt, supra,* 15 Cal.4th at p. 661; *People v. Wilborn, supra,* 70 Cal.App.4th at p. 348.)

We cannot assess whether the erroneous instructions to lie under oath during voir dire were harmless "in the context of the evidence presented," as the People urge. In addition to the general difficulty of assessing an irregularity in the selection of a jury, the error in this case, by its very nature, tended to distort the record. In short, we cannot confidently review the answers that prospective jurors gave during voir dire because they were told to lie.

Accordingly, we conclude that the instructions to lie about racial bias resulted in voir dire so inadequate as to render the trial fundamentally unfair. (See *People v. Holt, supra,* 15 Cal.4th at p. 661.) This error—which inevitably skewed the integrity of the entire voir dire process and adversely affected the manner in which the jurors would evaluate the evidence—is a "defect affecting the framework within which the trial proceeds" that is not subject to harmless error analysis. (See *Arizona v. Fulminante* (1991) 499 U.S. 279, 309-310 [111 S.Ct. 1246, 1264-1265, 113 L.Ed.2d 302, 331]; *People v. Flood* (1998) 18 Cal.4th 470, 500 [76 Cal.Rptr.2d 180, 957 P.2d 869]; *People v. Sarazzawski* (1945) 27 Cal.2d 7, 18-19 [161 P.2d 934].)

Therefore, defendant is entitled to a new trial.

II*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

---

*See footnote, *ante*, page 511.

## DISPOSITION

The judgment is reversed.

Sims, J., and Kolkey, J., concurred.