[No. C036850. Third Dist. Feb. 25, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
MOHAMMAD ALI ABBASZADEH, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

644

[redacted]

## COUNSEL

Eric S. Multhaup and Christopher H. Wing for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, John G. McLean and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MORRISON, J.**—In *People v. Mello* (2002) 97 Cal.App.4th 511 [118 Cal.Rptr.2d 523] (*Mello*) we reversed a criminal conviction because Placer County Superior Court Judge Joe O'Flaherty instructed prospective jurors to lie about racial prejudice and make up reasons to avoid jury service. This structural error rendered the trial fundamentally unfair, requiring reversal without a showing of prejudice.

In *Mello* we assumed this "astonishing" error was a "well-intentioned but misguided" incident. (*Mello, supra,* 97 Cal.App.4th at pp. 516, 518.) It now appears Judge O'Flaherty has a practice of instructing jurors to hide invidious bias.

In this case involving an Iranian charged with fraud offenses, tried before we issued *Mello*, a jury convicted defendant of two counts of grand theft by false pretenses (counts I and III, Pen. Code, §§ 487, subd. (a), 532, subd. (a)) and one count of selling securities by means of false statements (count II, Corp. Code, §§ 25401, 25540). On our own motion we augmented the record to include a transcript of the jury voir dire and ordered supplemental briefing on the effect of *Mello*.

We conclude *Mello* error is reversible regardless of the lack of objection in the trial court. Defense counsel's failure to object to a *Mello* instruction is excused for three reasons: (1) an objection would have been futile; (2) the People are at least equally at fault in allowing the error; and (3) we retain

discretion to excuse the lack of an objection and elect to exercise that discretion in defendant's favor because of the shocking nature of the error which rendered the trial unfair.

Because defendant challenges the sufficiency of the evidence on some counts, and success on these claims would bar a retrial (*Burks v. United States* (1978) 437 U.S. 1 [98 S.Ct. 2141, 57 L.Ed.2d 1]; *People v. Trevino* (1985) 39 Cal.3d 667, 694-699 [217 Cal.Rptr. 652, 704 P.2d 719]), we address those claims. We address other claims briefly for the guidance of the parties on remand. We will direct the clerk to forward a copy of this opinion to the California Commission on Judicial Performance, and direct that the retrial be before another judge.

## I. *Mello error.*

### A. *Mello.*

In *Mello*, we explained that the Judicial Council had issued guidelines for trial judges to use to inquire into racial bias during jury voir dire, and that in 1997 the California Supreme Court issued a decision instructing trial judges to follow those guidelines. (*Mello, supra*, 97 Cal.App.4th at p. 516, discussing *People v. Holt* (1997) 15 Cal.4th 619, 661 [63 Cal.Rptr.2d 782, 937 P.2d 213] (*Holt*) [because adequacy of voir dire is not easily subject to appellate review, trial judges "should closely follow" the Judicial Council's guidelines].)

"Unfortunately, Judge O'Flaherty did not heed the high court's admonition" and over objection "he instructed prospective jurors that, if they harbored racial bias against defendant, they should lie about it under oath and make up other reasons to be excused. Simply stated, this is astonishing." (*Mello, supra*, 97 Cal.App.4th at p. 516.) This "undermined defendant's ability to secure a fair and impartial jury and adversely affected the fundamental truth-finding function of the jury." (*Id.* at p. 513.) This structural error required reversal without a showing of prejudice. (*Id.* at p. 519.)

"[T]he instructions *irremediably* tainted the trial by making it impossible for the parties to know whether a fair and impartial jury had been seated." (*Mello, supra*, 97 Cal.App.4th at p. 517, italics added.) Moreover, "the erroneous instructions advised prospective jurors to both conceal and falsify relevant information. This procedure could deprive the parties of information necessary to make informed tactical decisions." (*Id.* at p. 518.) Further, "the instructions to lie during voir dire infected the entire trial process with the unacceptable notion that lying under oath may be appropriate." (*Ibid.*)

"Moreover, the instructions to lie during voir dire could have adversely affected the jurors' subsequent evaluation of the witnesses' sworn testimony. After all, Judge O'Flaherty advised the jurors that discomfort with telling the truth justifies concealing it, even under oath, in at least one circumstance. In effect, the judge set the wrong tone for the jurors' compliance with all of their important obligations. [¶] By depriving defendant of the ability to ensure that [defendant] would have a fair and impartial jury, Judge O'Flaherty also deprived [defendant] of due process of law." (*Id.* at p. 519.)

We concluded: "We cannot assess whether the erroneous instructions to lie under oath during voir dire were harmless 'in the context of the evidence presented,' as the People urge. In addition to the general difficulty of assessing an irregularity in the selection of a jury, the error in this case, by its very nature, tended to distort the record. In short, we cannot confidently review the answers that prospective jurors gave during voir dire because they were told to lie. [¶] Accordingly, we conclude that the instructions to lie about racial bias resulted in voir dire so inadequate as to render the trial fundamentally unfair. [Citation.] This error—which inevitably skewed the integrity of the entire voir dire process and adversely affected the manner in which the jurors would evaluate the evidence—is a 'defect affecting the framework within which the trial proceeds' that is not subject to harmless error analysis. [Citations.] [¶] Therefore, defendant is entitled to a new trial." (*Mello, supra,* 97 Cal.App.4th at p. 519.)

### B. *The error in this case.*

Judge O'Flaherty did not use the word "lie" in this case, as he did in *Mello,* but he invited the jury to lie using other language, in the italicized portion of this passage:

"Now, you probably all know that race and nationality have no place in this courtroom. The very integrity of the system that has developed in the last several generations depends on that we keep this social problem at least out of the courtroom.

"Now, obviously being labeled a bigot or a racist, this sort of thing, is insulting to most people. And so it's entirely possible that if you harbor these types of feelings that you may not want to raise your hand and basically put a sign on yourself saying: I am a racist, et cetera.

"I don't want somebody who harbors those types of feelings sitting on this jury, for obvious reasons.

"*So I would ask that you do whatever you have to do to get off the jury. And it's much more important, in my opinion, that you get off the jury, even if, you*

*know, you have to answer my questions in such a way that you get off in some other way, then do it. [¶] Does everybody understand that?"* (Italics added.)

■ We think the venire indeed understood that Judge O'Flaherty was inviting prospective jurors to do "whatever" was necessary to get off the jury "even if . . . you have to answer my questions in such a way" as to get off other than by admitting to harboring racist feelings, i.e., to lie. The Attorney General does not contest the fact that Judge O'Flaherty committed *Mello* error in this case.

After giving the above instruction, Judge O'Flaherty asked if anybody was prejudiced, and later the defense attorney asked whether anybody had feelings about Iranians or Persians. No juror said that he or she was prejudiced.

Later one prospective juror admitted being "a little bit" prejudiced and he was immediately excused.

Another juror, *who was seated at trial,* "wonder[ed] if there is going to be heavy accents. I have trouble sometimes understanding people who have a heavy accent." Judge O'Flaherty asked defense counsel if defendant had a heavy accent and then told the juror he would expect the juror "to immediately raise your hand" if he had trouble following the evidence at trial, and the juror agreed he could then be fair. Quite possibly this juror tried to comply with the *Mello* instruction, only to be thwarted. That we cannot know illustrates why *Mello* error is structural: It renders all further proceedings unreliable. "[T]he instructions irremediably tainted the trial by making it impossible for the parties to know whether a fair and impartial jury had been seated." (*Mello, supra,* 97 Cal.App.4th at p. 517.)

Defense counsel suggests the error is more acute in this case because part of defendant's business involved carpet sales, and some people harbor a "rug peddler" stereotype about Iranians and other Middle Easterners. (See, e.g., *Boutros v. Canton Regional Transit Authority* (6th Cir. 1993) 997 F.2d 198, 201.) This may be a matter to explore during voir dire on retrial, but it does not affect this appeal.

### C. *The error is not waived.*

■ The People rest their case on the waiver doctrine. We conclude that doctrine does not apply to this case.

The People cite four California Supreme Court cases holding various claims about voir dire questions were waived for lack of objection in the trial

court. (*People v. Seaton* (2001) 26 Cal.4th 598, 635 [110 Cal.Rptr.2d 441, 28 P.3d 175] [trial court's discussion of the evidence during individualized voir dire in capital case]; *People v. Staten* (2000) 24 Cal.4th 434, 451-452 [101 Cal.Rptr.2d 213, 11 P.3d 968] [additional questions on bias]; *People v. Sanchez* (1995) 12 Cal.4th 1, 61-62 [47 Cal.Rptr.2d 843, 906 P.2d 1129] [thoroughness of trial court's questions about a newspaper article]; *People v. Visciotti* (1992) 2 Cal.4th 1, 46-48 [5 Cal.Rptr.2d 495, 825 P.2d 388] [questions arguably allowing prosecutor to "preargue his theory"]; see also 6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Reversible Error, § 37(2), p. 497 [claims about jury composition and procedure].) Perhaps the closest of these cases is *People v. Staten, supra,* 24 Cal.4th 434, where the defense helped draft a written questionnaire for jurors which asked about racial bias, but then objected for the first time on appeal that the trial court failed to ask additional questions to uncover hidden prejudices. The California Supreme Court applied the general rule that the failure to object resulted in a waiver. (*Id.* at pp. 451-452.)

■ We agree that most errors in voir dire must be brought to the attention of the trial court or they will be deemed waived on appeal. This follows from the rule that we presume jurors can "unring the bell" and follow admonishments and instructions designed to cure a trial court error. (*People v. Seiterle* (1963) 59 Cal.2d 703, 710 [31 Cal.Rptr. 67, 381 P.2d 947]; *People v. Romo* (1975) 47 Cal.App.3d 976, 990 [121 Cal.Rptr. 684]; *People v. Powell* (1960) 186 Cal.App.2d 54, 59 [8 Cal.Rptr. 707].)

■ We disagree the waiver rule applies in this case for three reasons: (1) an objection would have been futile; (2) the People are at least equally at fault in allowing the error; and (3) we retain discretion to excuse the lack of an objection and elect to exercise that discretion in defendant's favor because of the shocking nature of the error which rendered the trial unfair.

■ First, there is a general exception to the waiver rule, applicable equally to judicial misconduct, where an objection would have been futile. (*People v. Hill* (1998) 17 Cal.4th 800, 820 [72 Cal.Rptr.2d 656, 952 P.2d 673]; *People v. Simon* (1927) 80 Cal.App. 675, 679 [252 P. 758]; Witkin & Epstein, *supra,* Reversible Error, §§ 38-42, pp. 500-504.) ■ That exception applies here because any type of objection would have been fruitless. In *Mello,* the defendant tried to remedy Judge O'Flaherty's error in three distinct ways: (1) she objected and moved for a mistrial; (2) she moved to discharge the venire; and (3) she moved for a new trial. (*Mello, supra,* 97 Cal.App.4th at pp. 514-515.) She struck out. Judge O'Flaherty denied all of these motions, stating he thought his unique method of voir dire (instructing jurors to lie about racial prejudice) was the best way to assure an impartial

jury. (*Id.* at p. 515.) Given Judge O'Flaherty's repeated refusal to acknowledge error in *Mello*, we have no reason to believe an objection in this case would have been any more successful.

Second, Judge O'Flaherty's instruction amounted to an order that jurors commit criminal violations of the law by breaking their oath. (*Mello, supra*, 97 Cal.App.4th at p. 517 & fn. 2.) The trial prosecutor was a deputy attorney general, who had a duty both as a law enforcement official and as an attorney, to object to this egregious and unlawful instruction. Indeed, the California Supreme Court has explained that a prosecutor is held to a *higher* standard of conduct than other attorneys "because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state." (*People v. Hill, supra*, 17 Cal.4th at pp. 819-820.) But in this case the prosecutor remained silent. It ill behooves the Office of the Attorney General to now assert on appeal that we should find a waiver where an employee of that office allowed Judge O'Flaherty to instruct the jurors to lie.

Third, "[t]he fact that a party, by failing to raise an issue below, may forfeit the right to raise the issue on appeal does not mean that an *appellate court* is precluded from considering the issue." (6 Witkin & Epstein, *supra*, Reversible Error, § 36, p. 497.) Generally, whether or not an appellate court should excuse the lack of a trial court objection "is entrusted to its discretion." (*People v. Williams* (1998) 17 Cal.4th 148, 161-162, fn. 6 [69 Cal.Rptr.2d 917, 948 P.2d 429].) Further, a statute provides in part that a reviewing court "may . . . review *any* instruction given, refused or modified, even though no objection was made thereto in the trial court if the substantial rights of the defendant were affected thereby." (Pen. Code, § 1469, italics added.) In the context of instructions affecting a defendant's rights, "The cases equate 'substantial rights' with reversible error[.]" (*People v. Arredondo* (1975) 52 Cal.App.3d 973, 978 [125 Cal.Rptr. 419].) We have previously held that *Mello* error denies a defendant federal and state due process and amounts to structural error, reversible per se, because it results in "voir dire so inadequate as to render the trial fundamentally unfair." (*Mello, supra*, 97 Cal.App.4th at p. 519.) Witkin points out a practical reason for excusing objections when the error is so fundamental as to deny a defendant federal due process of law: The judgment, if affirmed, might be vacated by a writ of habeas corpus. (6 Witkin & Epstein, *supra*, Reversible Error, § 20, p. 472.) In any event, we exercise both the general discretion to excuse lack of a trial court waiver, and the discretion to do so conferred by Penal Code section 1469, in defendant's favor. In our view the error is so shocking, affecting the structural integrity of the trial, that it would be a miscarriage of justice to allow the conviction to stand. The error not only

affected the substantial rights of this defendant but, if the conviction were upheld, would tend to impair the integrity of the judiciary. The waiver rule is designed to prevent a party from gambling that he will win despite the error, secure in the knowledge that a reversal is foreordained on appeal. Even if that prescience happened in this case (and we doubt it did) given that the prosecutor, too, acquiesced in the *Mello* instruction, and is equally responsible for the concededly structural error, we find no just alternative but to reverse the judgment.

Defendant also contends the lack of objection is irrelevant because of Penal Code section 1259, which provides in relevant part that an "appellate court may . . . review *any* instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (Italics added.) This statute has been used to excuse objections to substantive instructions, such as definitions of crimes and defenses and instructions about the permissible and impermissible uses of evidence. (E.g. *People v. Smithey* (1999) 20 Cal.4th 936, 976, fn. 7 [86 Cal.Rptr.2d 243, 978 P.2d 1171].) Defendant has failed to identify any case applying this statute to procedural jury instructions, specifically, *voir dire* instructions. In any event, because we find the waiver rule is inapplicable for other reasons, we need not address this issue.

### D.   *Other matters.*

Because of the nature of the error and the notoriety of Judge O'Flaherty's conduct, the interests of justice require that defendant be retried before a different judge, to avoid any implication of bias. (Code Civ. Proc., § 170.1, subd. (c).)

Although in *Mello* we tempered our opinion by calling Judge O'Flaherty's conduct "well-intentioned but misguided" (*Mello, supra,* 97 Cal.App.4th at p. 518), we did so under the assumption that the voir dire in *Mello* was an isolated example of voir dire in his courtroom. The needless expense to the public caused by retrials (at least two) is appalling and it is now difficult to conclude that Judge O'Flaherty's conduct was "well-intentioned" when it was not the product of an off-the-cuff decision during one trial, but was apparently his practice. It is not for us to determine whether Judge O'Flaherty's motivation was benign or malignant, but his conduct raises serious questions which must be answered. Therefore, we direct the clerk to forward a copy of this opinion to the Commission on Judicial Performance, the body best suited to determine whether Judge O'Flaherty's actions constitute actionable judicial misconduct. (Cal. Const., art. VI, §§ 8, 18; see Cal. Code Jud. Ethics, canon 3D(1).)

II.  *Other Issues.* *

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

The judgment (order granting probation) is reversed and the cause is remanded with directions to the trial court to reassign this case to a new judge. (Code Civ. Proc., § 170.1, subd. (c).) The clerk is directed to forward a copy of this opinion to the Commission on Judicial Performance for whatever action that body deems to be appropriate in the circumstances.

Nicholson, J., concurred.

**SIMS, Acting P. J.,** Concurring and Dissenting.—I concur in the unpublished portion of the majority opinion, where the majority concludes that various of defendant's contentions of prejudicial error are not meritorious.

I also concur in the majority's conclusion that voir dire was improper and in the majority's decision to report Judge O'Flaherty's conduct to the Commission on Judicial Performance.

However, I respectfully dissent from the reversal of the judgment. In my view, defendant has forfeited his right to complain of Judge O'Flaherty's improper voir dire because trial counsel failed to object in the trial court.

Our Supreme Court has uniformly held that, in order to preserve a problem with voir dire on appeal, a defendant must have objected to the improper voir dire in the trial court. (*People v. Seaton* (2001) 26 Cal.4th 598, 635 [110 Cal.Rptr.2d 441, 28 P.3d 175]; *People v. Staten* (2000) 24 Cal.4th 434, 451-452 [101 Cal.Rptr.2d 213, 11 P.3d 968]; *People v. Sanchez* (1995) 12 Cal.4th 1, 61-62 [47 Cal.Rptr.2d 843, 906 P.2d 1129]; *People v. Visciotti* (1992) 2 Cal.4th 1, 47-48 [5 Cal.Rptr.2d 495, 825 P.2d 388]; see generally *People v. Saunders* (1993) 5 Cal.4th 580, 589-590 [20 Cal.Rptr.2d 638, 853 P.2d 1093].) Our Supreme Court has never deviated from this rule, and we should not do so.

In *People v. Mello* (2002) 97 Cal.App.4th 511 [118 Cal.Rptr.2d 523], where we reversed a judgment because of Judge O'Flaherty's "astonishing" conduct of voir dire, trial counsel had promptly moved for a mistrial and had also moved to discharge the jury panel that had heard Judge O'Flaherty tell them to lie to get off the jury. (*Id.* at p. 514.)

*See footnote, *ante*, page 642.

The reasons for requiring an objection in the trial court have been described as follows: " 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is unfair to the trial judge and to the adverse party to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261], italics omitted; quoted in *People v. Saunders, supra,* 5 Cal.4th 580, 590.)

Moreover, " '[i]t would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.' [Citation.]" (*Porter v. Golden Eagle Ins. Co.* (1996) 43 Cal.App.4th 1282, 1291 [51 Cal.Rptr.2d 338].)

In this case, defendant does not claim that trial counsel was ineffective for failing to object. In any event, trial counsel may well have chosen not to object because he thought Judge O'Flaherty's technique would effectively purge the jury of ethnically prejudiced jurors or because he liked the jurors then in the box.

The majority refuse to apply the waiver rule for three reasons, none of which I agree with.

First, the majority say an objection would have been futile. However, I do not agree that an objection would have been futile because Judge O'Flaherty, in fact, overruled the objections to his jury voir dire technique in *People v. Mello, supra,* 97 Cal.App.4th 511. I would not assume that, faced with repeated objections to his conduct, Judge O'Flaherty would have persisted in continuing it.

Second, the majority excuse the need for an objection because the prosecutor, a deputy attorney general, did not object. But this trial was not some tennis match between defense counsel and the prosecutor. Rather, it was a truth-finding process in which *the trial court itself* (and the taxpayers) had a strong interest in seeing to it that this trial would not have to be done twice. (See, e.g., *People v. Saunders, supra,* 5 Cal.4th 580, 590 [failure to object " ' " "is unfair *to the trial judge*" ' " (some italics omitted)].) The People's lack

of objection should not excuse the defendant's failure to alert the trial court to the error.

Third, the majority rightly state that this court has discretion to consider the claim even in the absence of an objection. They are correct on the law, but I would not exercise that discretion here, where the result is consummate sandbagging.

The defendant argues that Judge O'Flaherty's admonition to the jury is reviewable without an objection because Penal Code sections 1259 and 1469 allow review of a jury instruction, without an objection, where the substantial rights of the defendant are affected. However, the judge's comment to the jury during voir dire was not the sort of instruction on the law that Penal Code sections 1259 and 1469 contemplate. (See *People v. Seaton, supra,* 26 Cal.4th 598, 636.)

Because defendant never objected to the voir dire procedure in the trial court, his claim on appeal should be held forfeited. Unfortunately, the majority's ruling permits trial counsel the unfair tactical advantage of " 'permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.' [Citation.]" (*Porter v. Golden Eagle Ins. Co., supra,* 43 Cal.App.4th 1282, 1291.)

For the foregoing reasons, I would affirm the judgment.