Filed 1/11/23  P. v. Barnes CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077878 |
| v. | (Super. Ct. No. BAF1701103) |
| ANTHONY TYRONE BARNES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Samuel Diaz, Jr., Judge.  Affirmed with directions.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland , Assistant Attorney General, Daniel J. Hilton and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

1

I.

INTRODUCTION

Defendant and appellant Anthony Tyrone Barnes was sentenced to 32 years for convictions stemming from a domestic violence incident. He contends the trial court erroneously denied his request for mental health diversion and that his sentence must be vacated and the matter remanded for resentencing. We reject defendant's contentions and affirm the judgment, as corrected.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant and the victim, B.L., began dating in November 2016, and defendant moved in to B.L.'s apartment shortly afterward. They broke up in September 2017, but defendant lived with B.L. while he looked for a new place.

Defendant knocked on B.L.'s door one night and asked if he could sleep in her bed with her. B.L. said she would go sleep on the couch and defendant could sleep in her bed and got up to move to the couch. As she was leaving the bedroom, defendant grabbed her and said he wanted her to sleep with him. Defendant then threw her face-down into the bed and got on top of her. B.L. yelled that she could not breathe, but defendant punched her in the back of the head four or five times while telling her to shut up.

Defendant then jumped off B.L. and left the room. He returned a few minutes later and asked B.L. if she loved him. B.L. said she hated him, so defendant began packing his belongings in B.L.'s closet. Defendant put his things in the living room, but

2

then went back into B.L.'s room while muttering vulgarities and "talking crazy." In between packing his things, defendant punched, choked, and berated B.L., including by telling her repeatedly that he was going to kill her. At one point, defendant choked B.L. so hard that she thought she was going to pass out.

B.L. covertly grabbed her keys, driver's license, and debit card and hid them under her shirt. B.L. tried to leave with her son, but defendant told her to get back into the bed and said she was not going anywhere with her son. B.L. fled from the apartment, ran downstairs, and ran about 100 feet to where her car was parked. She got inside the car but could not start it because she was shaking. Defendant used a spare key to open the car and began trying to pull B.L. out of the car. After punching B.L. five to 10 times, defendant dragged B.L. out of the car by her feet, causing her to land on her back on the ground.

Defendant told B.L. to go upstairs and back into the apartment. Although B.L. considered trying to flee, she felt like she had no choice. When they entered the apartment, defendant punched B.L. at least five times in the face and then resumed packing his belongings while yelling at B.L.

At some point (B.L. could not recall when), defendant told her, "Bitch, if you call the cops, I'm going to kill you." Defendant eventually told B.L. to pack his things and put them in a corner. He told B.L. that he was leaving and that she "better have all [his] shit packed neatly in this corner" when he got back. Defendant then left and took B.L.'s

3

car.  B.L. immediately ran to a nearby gas station where she asked an employee to call 911.

Defendant was arrested shortly afterward.  At the time, he had B.L.'s identification, car keys, and bank card on him.

Defendant was charged and convicted of kidnapping (Pen. Code, § 207, subd. (a); count 1),[1] inflicting injury on a cohabitant after having previously been convicted of domestic violence (§ 273.5, subd. (f ); count 2),[2] committing a criminal threat (§ 422; count 3), and dissuading a witness with force or fear (§ 136.1, subd. (c)(1); count 4).  The jury also found that defendant had been convicted of two prior robbery offenses, both of which constituted serious felony convictions (§ 667, subd. (a)) and strikes (§§ 667, subds. (b)-(i), 1170.12).

The trial court sentenced defendant as follows:  an upper term of eight years for the kidnapping count, doubled to 16 years for the strike; a consecutive term of one-third the midterm (16 months) for the kidnapping count, doubled to two years, eight months for the strike; a consecutive term of one-third the midterm (eight months) for the criminal threat count, doubled to 16 months for the strike; a consecutive term of one-third the midterm (one year) for the dissuading a witness count, doubled for the strike; and two 5-

_____

[1] All further statutory references are to the Penal Code.

[2] Defendant was convicted of domestic violence against B.L.  At the time of his current offenses, he was on parole for that conviction.

4

year serious felony enhancements.  The court also ordered defendant to pay $678.98 in restitution to the California Victim Compensation Board and a $3,000 restitution fine.

III.

DISCUSSION

Defendant contends the trial court erred by (1) denying his request for mental health diversion under section 1001.36, (2) imposing separate sentences on all four counts in violation of section 654, and (3) imposing fines and fees.  He also argues his sentence must be vacated and the matter remanded for resentencing under recently enacted Senate Bill No. 567.

A. *Mental Health Diversion*

Before trial, defendant moved for mental health diversion under section 1001.36. He supported the motion with a report from clinical psychologist Dr. Jennifer Bosch.  Dr. Bosch explained in her report that defendant had been diagnosed with anxiety disorder, unspecified; schizophrenia; major depressive disorder, recurrent, moderate; and unspecified psychosis not due to a substance or medical condition.  Dr. Bosch opined that defendant suffers from a psychotic diagnosis suggestive of a paranoid personality disorder and/or schizophrenia.

Dr. Bosch noted in her report that appellant showed signs of daily symptoms of depression, irritability, agitation, visual and auditory hallucinations, and sleep issues. Defendant told Dr. Bosch that "when not on his medication he is aggressive and fights everyone."  He also believes that "deputies are out to get him due to him being put in

5

segregation for no reason and that they are poisoning him through his food." He also claimed that a clinician and nurses tried to infect him and other prisoners with the COVID-19 virus in order to kill them.

According to Dr. Bosch's report, defendant had been placed on administrative segregation due to his aggressive combative behavior, including allegedly stabbing another inmate in the neck. Defendant was temporarily sent to Patton State Hospital. When he returned to jail in November 2019, defendant threatened to kill his attorney.

At the conclusion of her report, Dr. Bosch offered her opinion on defendant's case: "It is this examiner's opinion given the information provided by [defendant] that it is quite possible that at the commission of the crime he was unable to distinguish right from wrong and or the quality of his actions at the time of the offense due to a severe mental illness. It is this examiner's recommendation that [defendant] be referred specifically for a [section] 1026 evaluation to determine if he meets criteria for Not Guilty by Reason of Insanity as this was not the focus of this evaluation."

The trial court denied defendant's request for mental health diversion on the ground that he was "ineligible . . . based on prong six, dangerousness; as well as a finding of unsuitability given his criminal history and the conduct alleged in this case."

Defendant contends both findings were erroneous. We disagree as to the first one and thus need not address the second.

A trial court may grant pretrial diversion if a defendant meets all six statutory requirements. (§ 1001.36, subd. (b)(1)(A)-(F); *People v. Williams* (2021) 63 Cal.App.5th

6

990, 995.) The only one at issue here is the sixth and final requirement, which is that "the defendant will not pose an unreasonable risk of danger to public safety, as defined in [s]ection 1170.18, if treated in the community." (§ 1001.36, subd. (b)(1)(F).) Section 1170.18, in turn, defines "unreasonable risk of danger to public safety" as an "unreasonable risk that the [defendant] will commit a new violent felony" described in section 667, subdivision (e)(2)(C)(iv). (§ 1170.18, subd. (c).) These enumerated violent felonies, commonly referred to as "super strike offenses," include murder, attempted murder, and any serious or violent felony punishable by death or life imprisonment. (§ 667, subdivision (e)(2)(C)(iv)(I)-(VIII).)

We review a trial court's finding that a defendant is not entitled to mental health diversion because he or she poses an unreasonable risk of committing a super strike for an abuse of discretion. (*People v. Moine* (2021) 62 Cal.App.5th 440, 459; *People v. Pacheco* (2022) 75 Cal.App.5th 207, 213.) A trial court abuses its discretion when its decision is so arbitrary, capricious, or irrational that it exceeds the bounds of reason. (*People v. Pacheco*, *supra*, at p. 213.)

The trial court here reasonably found defendant would pose an unreasonable risk to public safety if granted mental health diversion. Defendant repeatedly threatened to kill B.L. while brutally beating and kidnapping her. When he was arrested, he had B.L.'s identification, car keys, and bank card. While in jail awaiting trial, defendant stabbed

7

another inmate in the neck and threatened to kill his attorney.[3] Although defendant's previous offenses occurred over 25 years before his current offenses, one of his convictions was for domestic battery against B.L., and he was on parole for that conviction at the time he committed his current offenses.

Under these circumstances, the trial court reasonably found that if treated in the community, defendant posed an unreasonable risk of committing a super strike (e.g., murder, attempted murder, or aggravated kidnapping punishable by life (§ 209, subd. (a).) The trial court therefore did not abuse its discretion by denying defendant's request for mental health diversion.

B. *Consecutive Sentences*

Defendant contends the trial court violated section 654 by imposing consecutive sentences for the criminal threat and dissuading a witness by threat of force counts because they were based on the same act. He also contends the trial court violated section 654 by imposing consecutive sentences for the domestic violence and kidnapping counts because they were incidental to one another. We disagree.

1. *Applicable Law and Standard of Review*

Section 654, subdivision (a) provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under either

---

[3] These allegations were provided to the trial court through Dr. Bosch's report, and defendant never argued in the trial court that they were inadmissible or inaccurate. He therefore forfeited his evidentiary challenge to the allegations raised for the first time on appeal. (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1362.)

8

of such provisions, but in no case shall the act or omission be punished under more than one provision."

"Section 654 precludes multiple punishments for a single act or indivisible course of conduct. [Citation.]" (*People v. Hester* (2000) 22 Cal.4th 290, 294.) """"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may [not] be punished . . . for more than one."" [Citation.]" (*People v. Jackson* (2016) 1 Cal.5th 269, 354.) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

We review a trial court's ruling on whether section 654 applies for substantial evidence. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368, disapproved on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.)

2. *Analysis*

Substantial evidence supports the trial court's finding that the criminal threat and dissuading a witness counts were based on different acts with different objectives and thus separately punishable. Defendant incorrectly argues that the charges were based on the same statement, "Bitch, if you call the cops, I'm going to kill you." B.L. testified that

9

defendant repeatedly threatened to kill her over the course of the incident. Her testimony about his multiple threats supports the trial court's implicit finding that he had different objectives behind different threats.

Defendant told B.L. multiple times that he was going to kill her. He did so while choking and strangling her to the point where she thought she may lose consciousness. He also threatened to kill her while intermittently packing his belongings and hitting and yelling at B.L. The trial court could reasonably find that defendant made these threats to scare B.L. and inflict emotional pain on her (in other words, to criminally threaten her).

The trial court could also reasonably find that defendant's threat, "Bitch, if you call the cops, I'm going to kill you," served another purpose. The trial court could reasonably find that defendant made this threat to pressure B.L. from calling law enforcement so that he would not be arrested (in other words, to dissuade her from being a witness). Substantial evidence thus supports the trial court's implied finding that the threat and dissuading a witness counts were based on separate, distinct acts with different objectives.

The trial court also permissibly sentenced defendant to consecutive sentences for the kidnapping and domestic violence counts. "'[A] course of conduct *divisible in time*, although directed to one objective, may give rise to multiple violations and punishment.'" (*People v. Cruz* (2020) 46 Cal.App.5th 715, 738.) Defendant's acts were sufficiently "'temporally separated'" to afford him the "'opportunity to reflect and to renew his . . . intent before committing the next'" offense. (*People v. Deegan* (2016) 247 Cal.App.4th

10

532, 542.) Defendant hit, choked, and threatened B.L. in her apartment before she fled. Defendant followed B.L.as she went outside the apartment, down the stairs, and about 100 feet to her parked car. Defendant then unlocked the car, punched B.L. repeatedly in the face, pulled her out of the car, and ordered her to go back upstairs. When they got back to the apartment, defendant again repeatedly punched B.L. in the face.

By the time defendant kidnapped B.L., he had already punched, choked, and threatened to kill her. After he successfully kidnapped her by forcing her back into the apartment, he continued beating her. Substantial evidence thus supports the trial court's implied finding that the kidnapping and domestic violence counts were sufficiently divisible and separately punishable. We therefore affirm the trial court's imposition of consecutive sentences for defendant's four convictions.

C. *Upper Term*

Defendant contends the upper term imposed on the kidnapping count must be vacated and the matter remanded for resentencing under recently enacted Senate Bill No. 567. We disagree.

The trial court explained its reasons for imposing the upper term as follows: "You were on probation for domestic violence against the same victim that you dragged out of the car and that you beat the crap out of her. Those photographs showed to me, man, it was so horrible. Her eyes were completely shot dark. She thought she was going to die that day. You may not remember that, but this victim will never ever forget that. She

11

thought she was a goner that night. For that, the [c]ourt will sentence you to the upper term of eight years."

"While this appeal was pending, Senate Bill No. 567 (2021-2022 Reg. Sess.) amended section 1170, subdivision (b), making the middle term of imprisonment the presumptive sentence. (§ 1170, subd. (b)(2); Stats. 2021, ch. 731, § 1, effective Jan. 1, 2022.) A trial court may impose an upper term sentence only where there are aggravating circumstances in the crime and the defendant has either stipulated to the facts underlying those circumstances or they have been found true beyond a reasonable doubt. (§ 1170, subd. (b)(1)-(2).)" (*People v. Flores* (2022) 75Cal.App.5th 495, 200 (*Flores*).) However, under amended section 1170, subdivision (b)(3), the sentencing court may "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

The parties agree, as do we, that these ameliorative amendments apply retroactively to defendant's non-final case. (See *Flores*, *supra*, 75 Cal.App.5th at p. 500; *People v. Lopez* (2022) 78 Cal.App.5th 459; *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109.) The parties disagree, however, on which factor(s) the trial court relied on when imposing the upper term and whether the case should be remanded for resentencing.

Defendant claims the trial court "did not rely on [his] prior convictions when it imposed the upper term" and thus did not "impos[e] the upper term because of [his] criminal history." The People, on the other hand, contend the trial court imposed the

upper term in largely because he was on probation for a conviction for domestic abuse against B.L. when he committed his current offenses.

We agree with the People. The trial court stated that it was imposing the upper term because defendant was "on probation for domestic violence against the same victim" when he committed his current offenses. Although the trial court did not impose the upper term for *all* of defendant's criminal history, the court unambiguously imposed it because he was on probation for his then-most recent conviction for domestic violence against B.L. The trial court therefore did not improperly rely on his entire criminal record when imposing the upper term.

Under amended section 1170, subdivision (b)(3), the trial court could have permissibly considered the certified record of defendant's prior domestic violence conviction in imposing the upper term, but it is unclear from the record whether the court did so. But the court did improperly find that defendant was on probation when he committed his current offenses and used that finding to impose the upper term. (See *People v. Zabelle*, *supra*, 80 Cal.App.5th at pp. 1114-1115.) Under amended section 1170, subdivision (b), defendant had to stipulate to that fact or the jury had to find it true before the trial court could rely on it to impose the upper term.

Courts are split on how to assess errors like this. (See *Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11.) In *Flores*, Division Three of the First District held that remand for resentencing under amended section 1170, subdivision (b) was unnecessary because any error in the trial court's imposing an upper term (instead of the presumptive

13

middle term required by Senate Bill No. 567) was harmless. (*Flores*, *supra*, 75 Cal.App.5th at p. 501.) The *Flores* court held reviewing courts may affirm an upper term, even if the defendant is entitled to the retroactive application of Senate Bill No. 567, so long as a reasonable jury would have found true "'at least a single aggravating circumstance'" justifying an upper term true beyond a reasonable doubt. (*Flores*, *supra*, at p. 501, quoting *People v. Sandoval* (2007) 41 Cal.4th 825, 839 (*Sandoval*).) The *Flores* court affirmed the defendant's upper term because a reasonable jury would have found true beyond a reasonable doubt the aggravating circumstances that he had "numerous convictions" and committed the underlying offense while on probation. (*Flores*, *supra*, at p. 501.)

Our colleagues in Division One recently disagreed with *Flores*. (*Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11.) The *Lopez* court held that assessing harmlessness in the context of retroactive application of Senate Bill No. 567 requires a two-step analysis. (*Ibid*.) The first question we ask is whether we "can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term." (*Ibid*.) The *Lopez* court reasoned that section 1170, subdivision (b)(2) "requires that every factor on which a court intends to rely in imposing an upper term, with the

14

exception of factors related to a defendant's prior conviction(s), have been admitted by the defendant or proven to a jury." (*Lopez*, *supra*, at p. 466.)[4]

If the answer to the first question is "yes," then the trial court's "reliance on factors not found true by a jury in selecting the upper term" was harmless. (*Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11.) But if the answer to that question is "no," then the reviewing court must ask if it is reasonably probable that the trial court still would have imposed the upper term "if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied." (*Ibid.*) If it is not reasonably probable that the trial court would have imposed an upper term, then the reviewing court must remand the case for resentencing under amended section 1170, subdivision (b). (*Ibid.*)

---

[4] Amended section 1170, subdivision (b)(2) provides in full: "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense.

In fashioning its test for harmlessness, the *Flores* court relied entirely on our Supreme Court's opinion in *Sandoval*. (See *Flores*, *supra*, 75 Cal.App.5th at p. 501.) But *Sandoval* was based on former section 1170, subdivision (b)'s language mandating sentencing courts to impose the middle term "unless there are circumstances in aggravation." *Sandoval* held that a sentencing court's finding of aggravating circumstances justifying an upper term was harmless if a jury would have found a single aggravating circumstance true beyond a reasonable doubt. (*Sandoval*, *supra*, 41 Cal.4th at p. 836.)

But, as amended by Senate Bill No. 567, section 1170, subdivision (b) now provides that the sentencing court may impose an upper term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term." (§ 1170, subd. (b)(2).) "As a result of this change, it may no longer be true that 'the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term.'" (*Flores*, supra, 75 Cal.App.5th at p. 501 [conc. statement of J. Liu].) Rather, an upper term is appropriate only if the aggravating circumstances "'justify the imposition' of that term under all of the circumstances, which may include evidence both in aggravation and in mitigation." (*Ibid.*)

16

The *Lopez* court correctly identified this change in the law by concluding that amended section 1170, subdivision (b) now "requires that *every factor* on which a court intends to rely in imposing an upper term, with the exception of factors related to a defendant's prior conviction(s), have been admitted by the defendant or proven to a jury." (*Lopez*, *supra*, 78 Cal.App.5th at p. 466, italics added.) The *Flores* court, on the other hand, relied on case law interpreting an outdated version of the statute, which allowed the sentencing court to impose an upper term if the jury would have found at least one aggravating circumstance true beyond a reasonable doubt.

But under amended section 1170, subdivision (b), the sentencing court may impose the upper term only if all of the circumstances, including aggravating and mitigating circumstances, "justify the imposition" of that term. A single aggravating circumstance thus may be insufficient for a sentencing court to conclude that the upper term is justified under amended section 1170, subdivision (b). We therefore respectfully disagree with *Flores*. (See *People v. Wandrey* (2022) 80 Cal.App.5th 962, 982 fn. 34 [disagreeing with *Flores* and following *Lopez*]; *People v. Zabelle*, *supra*, 80 Cal.App.5th at pp. 1113-1114 [agreeing with *Lopez* but "fram[ing] the issue somewhat differently" while noting "[b]oth our approach and the *Lopez* court's approach are the same in terms of outcomes"]; *People v. Dunn* (2022) 81 Cal.App.5th 394, [review granted Oct. 12, 2022, S275655] (*Dunn*) [disagreeing with *Flores*].)[5]

---

[5] Because our Supreme Court granted review in *Dunn*, we rely on the case only for its persuasive value. (See Cal. Rules of Court, rule 81115(e)(1).)

The Fifth District recently agreed with *Lopez*'s two-step analysis, but disagreed on the appropriate standard of review. (*Dunn*, *supra*, 81 Cal.App.5th at p. 408.) The court was "unconvinced that the *Chapman* standard of harmless error—applicable to errors implicating federal constitutional rights—must be applied to *all* aggravating circumstances in the *Lopez* court's first step." (*Ibid.*) The court noted that only one aggravating circumstance must be proved beyond a reasonable doubt under *Sandoval*, and observed that *Lopez* relied on only section 1170, subdivision (b) as authority for its holding that "*Chapman* applies to every factor." (*Ibid.*)

*Dunn* thus found that "*Flores* sets too low a standard for harmlessness and *Lopez* too high" and thus adopted "a version of the standard articulated in *Lopez*, modified to incorporate *Watson* in the first step." (*Dunn*, *supra*, 81 Cal.App.5th at p. 409.) *Dunn* articulated the appropriate test as follows: "The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, the reviewing court moves to the second step of *Lopez*, (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, the

18

reviewing court vacates the sentence and remands for resentencing consistent with section 1170, subdivision (b)." (*Dunn*, *supra*, at pp. 409-410, fn. omitted.) We agree with this approach and follow it here.

Applying *Dunn*'s first prong, we conclude the trial court's error here was not prejudicial. Defendant admitted his domestic violence conviction and a certified record proved it. Defendant does not and cannot dispute that the probation report confirmed he was on probation at the time he committed his current offenses. Thus, any reasonable jury would have found true beyond a reasonable doubt that defendant was on probation for a conviction for domestic violence against B.L. when he committed his current offenses. We are thus satisfied beyond a reasonable doubt that "the jury would have found anyone aggravating circumstance true beyond a reasonable doubt." (*Dunn*, *supra*, 81 Cal.App.5th at p. 410.)

We construe the trial court's statements about the extent and nature of B.L.'s injuries as a finding that defendant's offenses "involved great violence" or "great bodily harm." (Cal. Rules of Court, rule 4.421(a)(1).) Defendant claims the trial court erroneously used this aggravating circumstance to impose the upper term. Even though defendant is correct that the trial court could not rely on this aggravating circumstance under amended section 1170, subdivision (b) because defendant did not stipulate to it and the jury did not find it true, the error was harmless.

19

The trial court relied primarily on the photographs of B.L. taken shortly after defendant's abuse to evaluate the nature and extent of her injuries. Any reasonable jury would have interpreted them as strong evidence that defendant "beat the crap out of her."

Any reasonable jury also would have found beyond a reasonable doubt that, as the trial court put it, defendant "dragged [B.L.] out of the car" and she thought "she was a goner that night," as B.L. testified. Defendant's defense was that he had a "blackout" due to mental illness and could not recall anything from the incident other than having a verbal argument with B.L. He denied that he dragged her out of her car or caused any of her injuries. By convicting defendant of all four charges, the jury necessarily believed B.L., not defendant.

We therefore find it is reasonably probable that the jury would have found beyond a reasonable doubt that defendant's offenses involved "great violence" or "great bodily injury." (See *Dunn*, *supra*, 81 Cal.App.5th at pp. 409-410.) As a result, the trial court's reliance on aggravating circumstances not submitted to the jury or stipulated to by defendant was harmless because (1) any reasonable jury would have found beyond a reasonable doubt that defendant was on parole when he committed his current offenses and (2) it is reasonably probable a jury would have found true beyond a reasonable doubt the remaining aggravating circumstances. (See *ibid.*) We therefore need not turn to the second prong of the *Lopez/Dunn* test and affirm defendant's upper term sentence. (See *ibid.*; accord, *People v. Zabelle*, *supra*, 80 Cal.App.5th at p. 1114.)

20

D. *Restitution Fines*

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), defendant argues the trial court unconstitutionally imposed the $3,000 restitution fine and $678.98 in restitution to the California Victim Compensation Board.  He contends the case should be remanded so that he may request a hearing on his ability to pay the fines and fees.

*Dueñas* was decided over two years before defendant's sentencing hearing, yet he did not object to the imposition of restitution.  Defendant therefore forfeited any *Dueñas* argument.  (*People v. Greeley* (2021) 70 Cal.App.5th 609, 624 [holding *Dueñas* argument forfeited because sentencing occurred months after *Dueñas* was decided]; *People v. Nelson* (2011) 51 Cal.4th 198, 227 [holding defendant forfeited challenge to $10,000 restitution fine because at the time "the law called for the court to consider a defendant's ability to pay in setting a restitution fine, and defendant could have objected at the time"].)

Defendant disagrees for three reasons, none of which is persuasive.  He first argues that he did object to the restitution orders.  He notes that when he asked if he had to pay the restitution fine, the trial court interrupted him and said, "you're going to have to pay for it."  Defendant did not object, but instead submitted without stating anything further.

Defendant next argues that any objection would have been futile.  But defendant did not object in the first place, so the futility doctrine does not apply here.  (See *People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 648 [excusing defendant's failure to object

21

because "any type of objection would have been fruitless" given the trial court's previous rulings on three motions]; *People v. Sandoval* (2001) 87 Cal.App.4th 1433, fn. 1 [excusing defendant's failure to object based on change in the law because trial court was bound by earlier cases at time of trial].)

Finally, defendant notes that we have the discretion to excuse his forfeiture because his federal constitutional rights are at issue. We decline to do so. (See *People v. Greeley*, *supra*, 70 Cal.App.5th at p. 624; *People v. Boyette* (2002) 29 Cal.4th 381, 424 [holding defendant forfeited argument that admission of evidence violated federal constitutional due process rights by failing to object].)

Finally, defendant argues the trial court unconstitutionally imposed $280 in assessments, composed of $160 under section 1465.8 and $120 under Government Code section 70373. The superior court clerk's minute order and the abstract of judgment state that defendant was ordered to pay these assessments, but the trial court did not orally pronounce them when imposing its sentence. Because the oral pronouncement controls, we direct the trial court to correct its minute order and issue an amended abstract of judgment. (See *People v. Farrell* (2002) 28 Cal.4th 381, 384, fn. 2; *People v. Mitchell* (2001) 26 Cal.4th 181, 185-186.)

IV.

DISPOSITION

The clerk of the superior court is directed to correct its minute order and the abstract of judgment to reflect that the trial court did not impose $280 in assessments. As

modified, the judgment is affirmed. The clerk of the superior court is directed to prepare an amended abstract of judgment and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

FIELDS
J.