[Crim. No. 3130. Third Dist. Nov. 2, 1960.]

THE PEOPLE, Respondent, v. ROBERT DANIEL
POWELL, Appellant.

Roger Justice Fleischmann, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and John Foran, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Robert Daniel Powell was charged by information with three counts of burglary, it being alleged in each count that he did wilfully and unlawfully enter a certain building with intent to commit theft. Following a trial the jury returned a verdict of guilty on all three counts. Defendant moved to dismiss the second count and the motion was granted. Defendant's application for probation was denied and judgment was pronounced on the first and third counts. Defendant has appealed from the judgment and as grounds for a reversal contends (1) that the evidence is insufficient to support the judgment; (2) that the instructions were prejudicial; and (3) prejudicial error in the admission of evidence. Before discussing these contentions we shall summarize briefly the evidence as disclosed by the record.

On the afternoon of March 3, 1960, appellant drove a black 1949 Buick automobile into the service station operated by one Charles Smith. He was accompanied by another man. Appellant got out of the car, ordered a dollar's worth of regular gas and then proceeded to the restroom. Smith finished servicing the car and was waiting for appellant when he came out. Appellant met him with a semifolded bill. Smith turned to the cash box which was located on an island on the premises, unfolded the money and observed that it was a ten-dollar bill. Smith put the ten-dollar bill in the cash box, took out a five-dollar bill and four one-dollar bills, and handed the change to appellant who was still outside the car. Appellant acted quite surprised at this and said something to the effect, "I thought I gave you a one dollar bill" and that the attendant was an honest man. The attendant replied that it was a ten-dollar

bill and that he had $9.00 change coming. The appellant said, "Well, I had a ten dollar bill, so but I had a one dollar, too; I thought I gave you the one dollar bill." The appellant took the change and then said he also needed a "30 amp. fuse." Appellant and Smith proceeded into the office of the service station. Appellant was asked which one he wanted and he replied that he did not know, but he decided to take the short one. As they started outside the appellant handed the attendant a dime which he put in the cash box. Appellant decided he would take one of the long "30 amp. fuses" also, and they went back into the office and got it, for which the appellant paid another dime. At this point appellant said, "Gee, I don't want all this small change. So how about giving me a Five?" The attendant knew that he had only one five-dollar bill in the till and replied he was sorry but he did not want to give up his last five-dollar bill because then he would be unable to make change. Appellant said, "Well, give me a Ten," and he handed the attendant a handful of money. Smith took the ten-dollar bill out of the till and handed it to appellant and then counted the loose money that appellant had handed him and found that he had received only $9.00. Smith told appellant, "There is only nine dollars here. You are a dollar short." Appellant replied, "Well, I will take your word for it. You have already proven you are an honest man." The appellant then handed Smith another handful of money which was a ten-dollar bill and a one-dollar bill, saying, "Give me a Twenty." Thereupon the attendant gave appellant two ten-dollar bills. The appellant put the ten-dollar bills in his pocket and drove away.

Smith declared that the transaction moved very fast and he was confused as to what had taken place. He wrote down the license number of the car, however, and when he failed to strike a balance in his cash he called the sheriff's office.

In balancing his cash on the following morning he was $9.98 short. A demonstration with the same denominations of money was conducted in court between the district attorney and the witness Smith, wherein the witness started with $29 and following exchanges of money exactly as he had testified to he was left with $20.

It was established that the entire Smith transaction occurred on the island outside the building with the exception of the purchase of the two fuses which took place inside the office building.

The Smith transaction related to the second count of the in-

formation which was dismissed by the court after the jury had returned a verdict of guilty, but we have related the facts concerning it in some detail because they show appellant's method of operation.

The next transaction relates to the third count of the information. About 7 p. m. on March 6, 1960, appellant drove his car into a Richfield service station operated by one George Stewart. He purchased one dollar's worth of gasoline and gave the attendant a ten-dollar bill in payment. The attendant entered the office to obtain change and appellant followed him into the office and asked if he had a ''30 amp. fuse.'' After appellant paid a dime for the fuse the attendant gave him the $9.00 change due on the gasoline transaction. Appellant asked what the $9.00 was for and said, ''Well, I gave you a One, didn't I?'' After some further conversation appellant took the $9.00, and then he asked the attendant for a five-dollar bill and some one-dollar bills. Appellant gave the attendant some one-dollar bills and received a five-dollar bill. The attendant counted the one-dollar bills and discovered there were only four one-dollar bills. Appellant gave him another one-dollar bill, put the five-dollar bill he had received from the attendant on top of it, and asked for a ten-dollar bill. The attendant refused but gave appellant a ten-dollar bill after he received a second five-dollar bill. No loss was suffered in this transaction.

The next transaction, which related to the first count, occurred between 8 and 9 o'clock the same evening. Appellant drove into a service station operated by one Ray Henning. which was 4 miles from the Stewart station. Appellant asked for one dollar's worth of gasoline. After the car had been serviced appellant handed the attendant a ten-dollar bill. The attendant entered the service station office to get change and appellant followed him into the office. Again there was a discussion about fuses. The attendant took the change from the cash box and placed it on a table beside the cash box and then started looking for a fuse for appellant. Appellant left the office, obtained a coke from the vending machine outside the door of the office and returned to the office. The attendant told appellant not to forget his change. Appellant told the attendant that he thought he had given him a one-dollar bill. The attendant gave appellant his change. Appellant gave the one-dollar bills back to the attendant and asked for a five-dollar bill. The attendant gave appellant a five-dollar bill. Appellant then told the attendant to count the one-dollar

bills, and after he had done so the attendant passed the one-dollar bills back to the appellant who added another one-dollar bill to the four one-dollar bills and gave them and the five-dollar bill to the attendant and asked for a ten-dollar bill, which the attendant gave him. After appellant left the service station it was ascertained that there was a shortage of $5.10.

The appellant was arrested on the following day, March 7, 1960, and was asked if he had shortchanged the man on Silverado Trail. He replied, "I didn't steal money from that," and he pointed in the direction of Silverado Trail and said, "He is a liar if he said that." Appellant was then told that the man stated he was shortchanged $5.00, and appellant said, "I didn't take the money from him, but I will give him five dollars back, if that is what he wants." And again he said, "What I meant is I [will] give him Five dollars, but I didn't take it."

Appellant was then asked if he attempted to take money from the operator of the Richfield station on Old Sonoma Road and he pointed in a westerly direction and said he did not take money "from that man." He was also asked if during the previous week he had taken money from the station on Imola Avenue and he said, "I did get ten dollars from that one." He further stated, "I will pay them back; I will pay them back, but the other man lies."

Defendant did not take the stand to testify in his own defense but did call one defense witness, a Floyd Munds, in an attempt to impeach the testimony of Shields, the attendant on duty at the service station of Ray Henning. When asked whether Shields had told him that appellant did not take any money from him or the cash register on March 6th, Munds replied that he did not say that but that Shields did tell him he could not figure out how he had gotten any money and there was doubt in his mind.

We are unable to agree with appellant's contention that the evidence is insufficient to support his conviction of burglary. We think that it is clear from the foregoing recital of the evidence that the record supports the conclusion that appellant was a so-called confidence man or "fast change artist." If his plan succeeded he would shortchange the attendant. Each of the described incidents for which judgment was imposed took place inside the office of the service station. The Penal Code provides in section 459 that "Every person who enters any shop . . . or other building . . . , with intent to commit grand or petit larceny . . . is guilty of burglary."

If appellant entered the office of the service station with intent to shortchange the attendant, he would be guilty of burglary. The jury could reasonably infer that the entry into the office was for such purpose. The fact that the scheme did not work during one of the transactions would not change the result. The crime was complete when the appellant entered the office of the establishment with the intent to commit the crime.

Appellant next contends that the form of the verdicts and the instructions relating to the verdict were prejudicial. The verdict forms submitted to the jury read (except as to the number of the count) as follows: "We, the jury in the above entitled cause, find the Defendant ROBERT DANIEL POWELL ——————— of a violation of Section 459 of the Penal Code of the State of California as charged in the First Count of the Information on file herein, and fix the degree of the burglary as Burglary in the Second Degree."

The phrase as to the degree was added after the original form had been prepared and the forms were redrafted to incorporate the phrase. The court informed the jury as follows:

"Now Ladies and Gentlemen of the Jury, I will go over this form with you again. The first one reads:

"'We, the Jury, in the above entitled cause, find the Defendant, ROBERT DANIEL POWELL'—there is a blank there, you write either 'guilty' or 'not guilty' in accordance with your finding, 'of violation of Section 459 . . . and fix the degree . . . as burglary of the second degree.'

"Now if you find him 'not guilty' you just strike that out and after the comma 'and fix the degree of burglary of the second degree'; just strike that out and run a line through it with your pen."

Appellant argues that only the word "guilty" would fit into the blank space and that the court committed prejudicial error in giving the instruction in that form. We do not agree. While the instruction on the form of verdict might well have been clearer, we are satisfied that the jury was not misled. There is no indication of a belief on the part of the court that appellant was guilty and all of the instructions given by the court made it clear that the court was expressing no opinion as to the guilt or innocence of appellant. We must assume that the members of the jury were intelligent persons, and if they were they could not have misunderstood the instruction complained of.

■ Appellant's final contention is that "Evidence of defendant's criminal record was prejudicial and inflammatory and defendant's motion for mistrial and new trial should have been granted." Deputy Sheriff Bardes testified to a conversation he had with the appellant. He testified that appellant was asked whether or not he had been arrested in Vallejo. An objection which was interposed was sustained. Later Bardes said, "I think we asked him if he had ever been in prison. . . ." The court then told the witness to skip any part of the conversation pertaining to that. Bardes then testified that appellant was asked if he knew anything about confidence games and appellant answered, "Everybody that comes out of prison knows some of the games." Defense counsel asked for a mistrial, which motion was denied by the court. The court ruled that the deputy sheriff could tell what the appellant related. Thereafter, the court told the witness to confine his remarks to the incident before the court.

In the instant case appellant did not testify in his own behalf, and it is true, as contended by appellant, that it is the universal rule that the prosecution in a criminal case may not first introduce evidence of the evil character of the defendant unless such evidence is relevant to the issues in the case. (*People* v. *Donaldson*, 130 Cal.App.2d 250 [278 P.2d 739].)

We think that the jury should have been specifically instructed to disregard that portion of the answer to the effect that everybody who comes out of prison knows some of the "games," although the court did instruct the witness to confine his answers to the incident before the court. However appellant made no motion to strike that portion of the testimony and to instruct the jury to disregard it, but only made a motion for a mistrial. We do not believe that the court erred in denying the motion for a mistrial nor do we believe that a miscarriage of justice has resulted from the admission of the evidence complained of. ■ As stated in *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243], ". . . [A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. . . ."

We have reviewed the entire record and are satisfied that no miscarriage of justice has resulted.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.