Filed 1/6/26  P. v. Shkodnik CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MAKSIM SHKODNIK,<br><br>Defendant and Appellant. | 3 Crim. C103100<br><br>(Super. Ct. No. 20FE013912)<br><br>Sacramento County |

Defendant Maksim Shkodnik pled no contest to eight counts of lewd and lascivious acts on a 14-year-old child (Doe) in violation of Penal Code section 288, subdivision (c)(1)[1] and admitted he took advantage of a position of trust with the victim pursuant to California Rules of Court, rule 4.421(a)(11).  Consistent with a negotiated open plea entered into by defendant with his counsel's agreement, the trial court sentenced him to five years eight months in state prison.  Defendant appeals, arguing

---

[1]  Undesignated statutory references are to the Penal Code.

1

many of the trial court's comments made during sentencing were inappropriate and violated his rights.

Defendant also argues the trial court erred in "disqualify[ing] [him] from consideration for probation." (Capitalization omitted.) We conclude defendant forfeited these claims by failing to object at the time of sentencing. Further, even if defendant had objected to the trial court's comments, we would conclude the trial court's comments are not grounds for reversal.

## I. BACKGROUND

Defendant was Doe's taekwondo instructor and a very close family friend. Doe considered him to be a best friend and father figure.

In May 2020, Doe was at defendant's house watching a movie with him. Defendant asked Doe if he could move her bra straps down and give her a neck and shoulder massage. Doe was uncomfortable and told defendant to just watch the movie.

Doe fell asleep after having previously taken two antihistamine tablets. When she awoke, she found herself lying on defendant's chest and he was fondling her breasts underneath her clothes. She pretended to be asleep and rolled away, but defendant rolled her back onto his chest and continued the assault. He put his hand in her underwear and digitally penetrated her vagina two times. Between the vaginal penetrations, defendant put his fingers into his mouth. Defendant also placed the victim's hand on his penis over his pants and used it to stroke his penis. He then left the room.

The victim told police that defendant had also touched her chest and buttocks on the outside of her clothes four or five separate times during the prior week.

Police arrested defendant in September 2020. The amended information charged defendant with six counts of committing a lewd or lascivious act on a 14 year old and two counts of penetration with a foreign object. (Pen. Code, §§ 288, subd. (c)(1), 289, subd. (a)(1)(C).) The information also alleged defendant took advantage of a position of trust or confidence in committing these violations. (Cal. Rules of Court, rule 4.421(a)(11).)

2

In June 2024, before trial was scheduled to begin, defendant agreed to plead no contest to eight counts of committing a lewd or lascivious act on a 14 year old and to admit the charged aggravating factor. This plea agreement was negotiated before the trial judge who stated it was the "best offer you are ever going to have" and that it was "not an offer I would ever normally make." In exchange for his open plea, defendant agreed he would receive a sentence between probation, on the low end, and seven years eight months in state prison, as a maximum sentence. Defendant pled as agreed. Consistent with the plea agreement, the court referred defendant for a section 288.1 report, a prerequisite to a grant of probation. The trial court noted, "And I do apologize to the family. I know this has been a very long and tortuous experience for you. I apologize on behalf of myself as a representative of the justice system. Four years is way too long. Unfortunately, COVID stopped a lot of cases. . . . Four years is too long. . . . We could have done things differently, I wish we had, and again, I am very, very sorry that you've had to endure this amount of time to get your case resolved and heard by a judge."

As part of the report's preparation, a psychologist examined defendant. The psychologist stated, "[defendant] straddles the line between having a low and moderate likelihood to reoffend if placed on supervised release/probation at this time. His risk for serious physical harm is low. The most salient risk factor for [defendant] is his lack of awareness and understanding of the factors and processes that place him at risk for violence and led him to sexually offend. His level of risk is likely to be manageable and mitigated with community-based (outpatient) treatment due to his ability to follow orders and motivation to remain present for his family and co-workers. As such, it is this psychologist's professional opinion that [defendant] is a suitable candidate for probation. If granted probation, it is highly recommended [defendant] be required to attend a structured sexual offender treatment program of several months duration. He would further benefit from weekly individual therapy to process his feelings of depression and anxiety, and determine if these affective experiences contributed to his sexual offense."

3

The psychologist also stated defendant was not very forthcoming with regards to his version of the alleged offense. Defendant believed he did not need professional treatment or management for his sexual offending behavior. When asked what he could do differently to avoid the current situation, defendant stated, "Not to have the neighbor wife and daughter over all the time during Covid."

At sentencing, after the victim and her family members gave statements to the court, the trial court made the follow statements:

"THE COURT: Well, first, I do want to say that four years is inexcusable. Our country went through a pandemic that continues to ripple through the criminal justice system. It's not an excuse, but, unfortunately, it has created situations where justice has been denied because it's been so delayed. I apologize to [Doe], to [mother], to [father], to [sister]. I apologize to all of you that it has taken so long to get here today.

"Now, I do want to offer a little bit of a different perspective here, just because as a judge, I impartially listen to both sides.

"When this case was assigned to me -- I generally try to resolve cases because I think, you know, ultimately, it's better in certain cases, like this, for example, that a young -- I know you don't consider yourself a victim, [Doe], and I will honor that -- but it's very difficult, and I've tried over the 27 years I've been a judge, I can't even tell you how many trials I've presided over where children have to come in to court and tell 16 strangers in the community what happened to them.

"And what I would say about [defense counsel] is that he worked very hard to resolve this case, and he is not to blame for the fact that the doctor didn't do her report in a timely fashion. I do not hold it against [defense counsel] that it took this long. He sat down with myself and [the prosecutor] in good faith and negotiated this case that spared you, [Doe], from coming in to court and having to talk to strangers, and I think, you know, ultimately, that was beneficial. And I am sorry that it has taken so long. I make no excuses for that. It shouldn't have.

4

"So that's just what I want to preface this with.

"[Mother and father], you're good parents.  I cannot tell you how many parents do not believe their children when they tell them that they have been molested.  It is stunning to see people who don't believe their own children.  That's not who the two of you are, and, ultimately, that is going to be the most healing thing you can do for your daughter, is to believe her, and you've already done that.  You've done that.

"Knowing how deeply this has impacted you, hearing a big man cry because he's so heartbroken as to what happened to his daughter, and, [mother], having you come forward to let your daughter know how angry you are about this, that's healing for your daughter because she knows how much you love her and how much you care for her and how important she is to you.  There are many moms and dads who don't believe their children.  You never questioned her.  You always believed her.  That is huge.

"[Sister], you are still very angry, and you are entitled to be angry.  I'm always amazed when I hear from people like [Doe] and [father and mother], that they can find it in their heart to forgive.  In my 27 years of being a judge, I am always amazed at the grace and kindness that people ultimately have in their hearts to find it to forgive someone who has done something so egregious against a child they were supposed to protect.  And you live with that guilt; I know it.  You live with the guilt that you didn't protect your daughter.  You did.  You trusted this man.  You had no reason not to trust him.  That's what makes this so painful.

"You are not to blame, [mother].

"You are not to blame, [father].

"You are not to blame, [Sister].

"And, [Doe], you were a child.  There was a child, and there was an adult.  There's one person to blame here, and that's [defendant].  He's to blame.

"And that's why I'm actually glad that I had the report of [the psychologist], and even though I disagree, ultimately, with her conclusion, I found it to be extremely . . . illuminating to me, because it gives me some insight into what [defendant] thinks.

"[Defendant], you claim a 14-year-old girl was looking for a father figure in a flirtatious way. That's sick. Fourteen-year-old girls don't look at their dads in a flirtatious way, and if that was your read, which it apparently was because it's in quotation marks -- if that was your read with respect to this young girl, there's something seriously wrong with you.

"She further says, quote, 'He was cooperative with the evaluation, but needed prompting to elaborate on his alleged crime. He explained that he was anxious that sharing information about the offense could hurt his legal case.'

"A person who is truly remorseful and is willing to take responsibility would be forthcoming. You are not. You had the opportunity. You could have said you were sorry. You could have taken full responsibility. I've read this report several times. There's no place in this report where you take responsibility.

"This is what the doctor who's on -- who says you should get probation, this is her analysis: [Defendant] demonstrated some problems with insight and lack of appreciation of the factors and processes that place him at risk for violence and sexual reoffending. When asked what he could have done differently to have avoided his present legal situation, [defendant] stated, quote, 'Not to have the neighbor wife and daughter over all the time during COVID.' Really?

"How about not molesting a 14-year-old? How about not taking advantage of a position of trust and sexually penetrating this young girl? That would have been something you could have done differently. Inviting somebody into your home is a kindness. It's something that we should all be willing to do. Sexually penetrating and molesting a child is something nobody should do. But those weren't your words. Your words were, shouldn't have had them over during COVID. The only warning sign --

6

again, from the doctor -- he could identify was the victim becoming, quote, 'clenchy.' So it's your thought process that this 14-year-old young girl was coming on to you.

"Under risk management factors, [defendant] did not present with any explicit or formed plans regarding professional services for his sexual offending behavior.

"And here's where we have a problem: He further did not believe he needed professional treatment or management in regard to his sexual offense; nevertheless, he expressed willingness to attend all services required by the Court.

"There's a saying, you must first acknowledge you have a problem before you can deal with the problem. You, sir, do not acknowledge you have a problem. I will tell you, it is a problem for a grown man acting as a father figure to sexually penetrate a 14-year-old girl, and the fact that you do not acknowledge that you have a problem is extremely concerning to this Court.

"I was, quite frankly, surprised by this report. I thought you would have taken the time to really give it some thought as to what you had done, and, instead, you victim blame. You blame a 14-year-old for your actions.

"Four years in therapy, and [Doe] finds it in her heart to forgive you. That's a gift. That's a gift to you. It's a gift to your family.

"Now, before I sentence you, I want to explain to [Doe] and her family what the Legislature has done over the last eight years.

"They have made it very difficult for judges to sentence offenders the way we used to sentence offenders. A great emphasis now is placed on the defendant, what has happened to him in his life, did he grow up with trauma, did he have hardships in his life, and I have to consider that. I'm bound to consider that. I've taken an oath to uphold the law, and the last thing I want to do to you folks today is to get this wrong and have this come back again. That would be the worse thing I could do for you.

"But I will tell you who I never see in these courtrooms on Friday afternoons -- or on Fridays when I do sentencing. I never see any member of the Legislature or the

7

Governor, who enacted these laws. They're never here to hear what victims and their families endure. They are never here.

"They pass these laws. I have to abide by them, whether I agree with them or not, because that is an oath that I've taken, and that's why I take the time to explain this to you.

"[Defendant] has some mitigating factors that I have to consider. I have to consider the fact that he entered a plea and did not go to trial, and that is good. I have to consider that he has no criminal record, and that is good. That is good. But I also have to consider that he endured childhood trauma, which I think I have, through an abundance of materials provided by [defense counsel], that an appellate court is going to look at, that he has serious medical conditions that he had as a child, that he had no father in his life. I have to consider these things, because if I don't the Third District Court of Appeal is going to say, Judge Gilliard, you didn't consider these factors, and the Legislature requires you to do that and to weigh them and to decide what is -- what is more persuasive to you.

"I'll tell you what's most persuasive to me, is the fact that he abused the position of trust. And it wasn't just a position of trust as a taekwondo instructor. It was as a surrogate father.

"And you knew that. You, [defendant], knew that. You knew that was the position that this young girl looked to you for. You were her father figure. That doesn't diminish her father's love for her, her dad loves her, but you filled that vacuum right during COVID, right when we were all separated, couldn't be amongst all the people we wanted to be amongst, couldn't go to school. You were there, and you filled that void.

"So when I weigh everything, you don't deserve probation. No. This is a painful day for your family, and you knew what your family was going through. You know you have a cousin that has cancer. You know that you have elderly parents that depend upon

8

you.  You know that, but you selfishly sexually gratified yourself by penetrating a 14-year-old girl.  That's what you did.

"So when I weigh all of that, you do not deserve to go -- you do not deserve probation because you don't have a problem, according to yourself, so a person without a problem, who doesn't recognize they have a problem, is not a good risk for our community, so I will be sentencing you to prison.

"And so when I weigh a position of trust against all the things that I've indicated, I believe the appropriate sentence for you, sir, is five years and eight months, and that is what I will be sentencing you to today.  That is the low term.

"And I do that, [Doe, mother and father, sister], because I don't want you to have to relive this nightmare.  This, in this Court's view, is the best way to keep you from ever having to come back on this case.  I don't want to risk it.

"He does have mitigating factors that I had to consider, and I have considered, [defense counsel], everything you gave to the Court, and, sir, I do not hold it against you that this took four years.  You worked with [the prosecutor] and myself, and we resolved this case."

At the conclusion of these statements, the trial court sentenced defendant to the low term of one year in state prison as to one count and seven additional consecutive terms of eight months for a total aggregate sentence of five years eight months in state prison.

Defendant filed a timely notice of appeal.

## II. DISCUSSION

Defendant argues the trial court's comments and failure to grant him probation was error.  Defendant forfeited these contentions by failing to object.

A defendant's failure to object to the sentencing court's selection or explanation of sentencing choices at trial forfeits that issue for the purposes of appeal.  (*People v. Scott* (1994) 9 Cal.4th 331, 351-354.)  Defendant has the obligation to raise any missed or

9

mistaken sentencing factors.  (*Id.* at p. 353.)  Further, a defendant must object in the trial court to alleged improper questioning, conduct, or commentary by the trial court to preserve the claim on appeal.  (*People v. Cook* (2006) 39 Cal.4th 566, 598.)  We reject defendant's argument in his reply brief that it would have been futile to bring any of these matters to the trial court's attention and do not exercise our discretion to reach these forfeited claims.  (*People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 648.)

Having failed to object to the trial court's statements during sentencing, defendant forfeited his claims on appeal.[2]

---

[2] Even if defendant had not forfeited these claims, we would still conclude the court's comments are not grounds for reversal of his sentence.  Taken in context, the trial court was addressing the parents and family of Doe and attempting to explain the delays in bringing the case to a close.  Although some of the court's comments might have been better left unsaid, it is apparent the trial court, who negotiated the plea with counsel on the eve of trial, was up front that it considered the case to be very serious.  Even so, the court left open probation as a sentencing option by referring defendant for a section 288.1 report.  The court stated it considered many factors in reaching its decision to deny probation but clearly was negatively impressed by statements made by defendant to the preparer of the report, which the court was entitled to consider.  All in all, defendant's sentence was well within the parameters of the negotiated plea.

## III. DISPOSITION

The judgment is affirmed.

                                                           /s/
                                                           WISEMAN, J.*

We concur:

/s/
MAURO, Acting P. J.

/s/
DUARTE, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.